(No. 6705.   June 30, 1939.)

ADA COUNTY, a Political Subdivision of the State of Idaho, Plaintiff, v. CALVIN E. WRIGHT, State Auditor of the State of Idaho, Defendant.

[92 Pac. (2d) 134.]

Kenneth O'Leary, Prosecuting Attorney, and Eugene H. Anderson, for Plaintiff.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Defendant.

AILSHIE, C. J.—Prior to the meeting of the 1939 Session of the legislature, the statute, sec. 48–127, I. C. A., provided a graduated scale of fees for licensing motor vehicles. The 1939 Session, by the provisions of House Bill No. 12 (chap. 17 of the 1939 Laws) amended the statute so as to greatly reduce the fees and place the registration license fees on a uniform flat rate basis. The amendment reads in part as follows:

*"The fee for licensing each motor vehicle designed exclusively for the purpose of carrying passengers and not used primarily for hire, shall be five dollars.* The fees for licensing all *other* motor vehicles, trailers and semi-trailers owned or used within this State shall be as follows:"*

Later during the same session, by House Bill No. 415 (chap. 227 of 1939 Laws) the legislature amended the act (chap. 17) from which the foregoing quotation is made, by changing some of the subsections providing a graduated scale of registration fees for each of the various kinds of motor vehicles, other than "motor vehicles designed exclusively for the purpose of carrying passengers and not used primarily for hire," such as trailers, cycles, freight trucks and passenger busses. However the latter amendment is of no moment in our present consideration.

Under the statute (sec. 39–2111, I. C. A.), ninety per cent of the motor vehicle registration fees goes to the county and only ten per cent to the state. The reduction (about 75%) in these fees necessarily resulted in depriving the counties and highway districts of their principal revenue for construction and maintenance of roads and bridges and payment of their outstanding bond indebtedness. It must have been at once apparent to the members of the legislature that something would have to be done to meet and make up for the loss to the counties and highway districts that the change in license fees would bring about. As a solution for this problem and to meet the prospective resultant deficit in the county finances, the legislature enacted House Bill No. 11 (chap. 16 of 1939 Laws) which was approved

and went into effect at the same time as a concurrent and companion act and supplement to House Bill No. 12 (chap. 17, 1939 Laws).

The provisions of chapter 16 involved in the consideration of this case are set out as a footnote hereto for convenient reference.[1]

---

[1] "Section 3. All of the highways now in the state and all of the highways hereafter to be established in the state shall be and constitute the statewide highway system of the State of Idaho, and that each such highway shall constitute an integral part of the statewide highway system. The several counties, highway districts, good road districts and cities and villages in the state shall continue to perform, as agents of the State of Idaho, all acts necessary and proper for the administration, construction and maintenance of highways within their respective limits and in relation thereto shall exercise all of the powers and perform all of the duties vested in them by law, under the general supervision of the State of Idaho.

"Section 4. That the appropriation hereinafter provided shall be for the purpose of better administration, construction and maintenance of highways and the payment of indebtedness incurred for the construction and maintenance of highways.

"Section 5. That there be and is hereby appropriated and allocated out of the State Highway Fund of the State of Idaho, to the several counties of the State, such sum of money as will equal twenty per cent of all moneys accruing to such State Highway Fund between January 1 and December 31 of each year, including the year 1939, from the Motor Fuels Tax provided by Chapter 46 of the Session Laws of Idaho of 1933, but in no event shall the total of the appropriation to the counties for any one year be less than $1,000,000.00, which said appropriation shall be distributed among the several counties of the State in the proportion which said counties shared during the year immediately preceding in the fees for licensing motor vehicles designed exclusively for the purpose of carrying passengers and not used primarily for hire. The appropriation hereby made shall be remitted to the counties on the following dates and in the following amounts: The sum of $200,000.00 on the 25th day of April of each year and the sum of $250,000.00 on the 25th day of July of each year and the sum of $250,000.00 on the 25th day of October of each year and the sum of $300,000.00 on the 15th day of January of each year, and thereafter, but not later than February 1 in each year the State Auditor shall ascertain the sum of money which will equal 20% of the revenue as specified above for the preceding calendar year, and shall remit to the several counties, each county's respective *pro rata* share of the

It is first urged that the act violates sec. 17, art. 3, of the state constitution, because it is ambiguous, indefinite, and uncertain and not "plainly worded" as commanded by the constitution, which says: "Every act or joint resolution shall be plainly worded, avoiding as far as practicable the

excess, if any, over the sum of $1,000,000.00 already paid to the counties for such year.

"Such moneys shall be placed by each county in a fund to be known as the Motor Fuels Tax Fund and the county shall apportion the same as follows: To the Interest and Sinking Fund of said county such amount as may be necessary to meet the interest and sinking fund requirements for the current year on any unpaid bonds issued by the said county for road and bridge purposes, or refunding bonds issued to take up such bonds; the county shall pay over to each highway and good roads district within such county, such portion of the balance of such Motor Fuels Tax Fund as shall be proportionate to the amount such district shared during the preceding calendar year in the fees for licensing motor vehicles designed exclusively for the purpose of carrying passengers and not used primarily for hire, and the County shall apportion as and when needed for disbursement for current expenses for the construction and maintenance of highways any further balance of such Motor Fuels Tax Fund to the road and bridge fund of the said county, and the county may expend all or any portion thereof in the construction and maintenance of State highways in such county; provided, however, that if and in the event there shall remain in such Motor Fuels Tax Fund on the 30th day of December in each year, any moneys not needed for current expenses for the construction and maintenance of highways, such moneys shall be returned to the State of Idaho by the county and shall be deposited in the State Highway Fund for future expenditure by the state for the construction and maintenance of highways in such county.

"Each highway and good roads district receiving such apportionment from the Motor Fuels Tax Fund shall apportion the same as follows: To the interest and sinking fund of such district, such amount as may be necessary to meet the interest and sinking fund requirements for that year on any unpaid bonds issued by such district, and any balance of such funds shall be used for road and bridge maintenance and construction. Each district may expend all or any portion of such balance of such funds in the construction and maintenance of State highways in such district.

"No part of such Motor Fuels Tax Fund or any apportionment therefrom shall ever be used for any purposes other than those hereinbefore provided, except as hereinafter provided, and if, at the end of any fiscal year there shall remain an unexpended balance of such funds

use of technical terms." It is contended on behalf of the state auditor that it will be impractical for him to carry out the mandate of the act (sec. 5, *supra*) in its requirement that, "not later than February 1 in each year the State Auditor shall ascertain the sum of money which will equal 20% of the revenue as specified above for the preceding calendar year, and shall remit to the several counties, each county's respective *pro rata* share of the excess, if any, over the sum of $1,000,000.00 already paid to the counties for such year."

In their brief counsel for defendant say:

"From the foregoing in what manner or means is the State Auditor to determine what proportion of said sum any particular county is to receive. The act requires the state auditor to distribute the money in proportion which the said counties shared during the year immediately preceding in the fees for licensing motor vehicles designed exclusively for the purpose of carrying passengers and not used primarily for hire. We will venture to say that all of the taxicabs operating in the State of Idaho are using motor vehicles designed exclusively for the purpose of carrying passengers. The act does not set forth any procedure whereby the state auditor may be guided in determining the correct proportion of the moneys to be given to the counties."

The answer to the foregoing is, we think, contained in the statute. It says: "said appropriation shall be distributed among the several counties of the State in the proportion which said counties shared during the year *immediately preceding* in the fees for licensing motor vehicles designed exclusively for the purpose of carrying passengers and not used primarily for hire."

The distribution of moneys collected for motor vehicle licenses has been going on for years without any difficulty so great as to engender litigation in this court over the

in the hands of the treasurer of any highway district or good roads district, such balance shall be carried forward and retained and thereafter applied to the maintenance and construction of highways or the payment of bond interest and principal and sinking fund requirements as hereinbefore provided."

validity of the statutes. (See *State v. Cleland*, 42 Ida. 803, 248 Pac. 831; *White v. Pioneer Bank & Trust Co.*, 50 Ida. 589, 298 Pac. 933.) It rather seems to us that the statute fixes the percentage and declares the thing to be accomplished, and that the detail of working it out is merely a matter of accounting, which may very well be left to the auditor to work out as a purely ministerial and administrative act. (*State v. Taylor*, 58 Ida. 656, 664, 78 Pac. (2d) 125.) The records of the offices to which registration and license fees are paid will undoubtedly furnish the necessary information in the future as they have evidently done in the past. It is not impossible to give the provision a workable construction. We hold that the act is not obnoxious to sec. 17, art. 3, of the constitution, and that it is not open to the objection which prevailed in *Knight v. Trigg*, 16 Ida. 256, 100 Pac. 1060.

It is next contended that the act is a local and special law and, as such, violates paragraph 7, section 19, of article 3 of the constitution. That contention is unsound. The act applies to all counties alike; it applies to all highway and good roads districts alike. Its application is general and uniform as to all that fall within its classifications. A special law applies only to an individual or number of individuals out of a single class similarly situated and affected, or to a special locality. A law is not special simply because it may have only a local application or apply only to a special class, if in fact it does apply to *all such classes* and *all similar localities* and to *all belonging to the specified class* to which the law is made applicable. (*Mix v. Board of County Commrs., etc.*, 18 Ida. 695, 705, 112 Pac. 215, 32 L. R. A., N. S., 534; *Hettinger v. Good Road District No. 1*, 19 Ida. 313, 318, 113 Pac. 721; *In re Crane*, 27 Ida. 671, at 690, 151 Pac. 1006, L. R. A. 1918A, 942.)

The objection is made to this act that it fails to require a *claim* to be presented by a county for its share of the license tax collected and to present the same to the state board of examiners and procure their approval and allowance of the claim as provided by sec. 18, art. 4 of the constitution. We find it unnecessary to pass on this objection

further than to say: The question does not arise in this case, for the reason that the claim here asserted has been presented to and been approved by the board. In the second place, *if it is* such a "claim" *against the state* as is required to be presented to the board, it would still have been unnecessary for the legislature to specially provide in this act for its presentation and allowance by the board, for the reason that presentation of all "claims against the state" is provided for by the constitution. (Sec. 18, art. 4, Const.; *State ex rel. Hansen v. Parsons,* 57 Ida. 775, 69 Pac. (2d) 788.)

The act in question does not conflict with the provisions of section 2 of article 7 of the constitution,[2] as contended by defendant, in so far as it provides for raising this revenue and distributing a portion of it to the respective counties. That method of raising revenue by license and excise taxes has been recognized and practiced as a constitutional method throughout the history of the state. Moreover the building and maintenance of the roads and highways by the state is one of the sovereign duties of government; and the act here involved, recognizing this duty on the part of the state, constitutes counties and highway districts as agencies and arms of the state for carrying out this governmental purpose. (*State ex rel. McKelvey v. Barnes,* 55 Ida. 578, 586, 45 Pac. (2d) 293; *Murtaugh Highway Dist. v. Merritt,* 59 Ida. 603, 85 Pac. (2d) 685, 689.) The object to be accomplished is a "public purpose" within the meaning and purview of the constitution as ruled in *State ex rel. Walton v. Parsons,* 58 Ida. 787, 80 Pac. (2d) 20; *Gem Irrigation Dist. v. Van Deusen,* 31 Ida. 779, 176 Pac. 887.

The legislature possesses plenary power in the matter of raising revenue except in so far as it is specifically

---

[2] "Sec. 2. The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a *per capita* tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation."

limited by the constitution. (*Achenbach v. Kincaid*, 25 Ida. 768, 781, 140 Pac. 529; *In re Kessler*, 26 Ida. 764, 770, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083, Ann. Cas. 1916E, 282; *Williams v. Baldridge*, 48 Ida. 618, 284 Pac. 203; *State v. Nelson*, 36 Ida. 713, 718, 213 Pac. 358; *Hunt v. City of St. Maries*, 44 Ida. 700, 706, 260 Pac. 155; *Independent School District v. Pfost*, 51 Ida. 240, 251, 4 Pac. (2d) 893, 84 A. L. R. 820.) The constitution instead of limiting the power of the legislature has specifically stated that it shall have the power to ''impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state,'' etc. (Sec. 2, art. 7, Const.)

It is further urged, however, that this act contravenes section 6, article 7,[3] in that it attempts to levy and collect a state tax for county, city and municipal purposes. The answer to this contention is twofold; in the first place the tax appropriated by this act is an excise tax and not an *ad valorem* tax, and the constitutional provision here invoked is dealing only with *ad valorem* taxes. In *Idaho Gold Dredging Corporation v. Balderston*, 58 Ida. 692, at 718, 78 Pac. (2d) 105, 117, we said:

''Appellants' further contention that the act violates article 7, section 6, of the Constitution of Idaho, in that it provides a special tax for the 'benefit of municipal corporations, to wit, independent school districts,' is untenable for two reasons: First, because article 7, section 6, of the Idaho Constitution applies only to property or *ad valorem* taxes.''

(*Independent School Dist. v. Pfost*, 51 Ida. 240, at 250, 4 Pac. (2d) 893, 84 A. L. R. 820; *State v. Union Central Life Ins. Co.*, 8 Ida. 240, 67 Pac. 647; *State v. Doherty*, 3 Ida. 384, 29 Pac. 855; *State v. Nelson*, 36 Ida. 713, 213 Pac. 358.)

In the second place, as heretofore intimated, the tax here directed to be distributed to the respective counties is in

---

[3] ''Sec. 6. The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation.''

fact not for county purposes but is directed to be turned over to the counties and by them expended in part and the balance to the highway districts, all for the purpose of carrying out and performing their duties for and *as agents of the state,* under specific provisions of this act.

The contention, that the act violates sec. 1, art. 8, of the constitution, in that it creates a debt or liability against the state in excess of the aggregate debt limit of $2,000,000 is without merit. This act creates no debt against the state in any sum whatever. It simply appropriates and directs the expenditure of the motor fuel tax collected from the sales of gas and motor fuels and paid into the State Highway Funds and provides that "in no event shall the total of the appropriation to the counties for any one year be less than $1,000,-000, which said appropriation shall be distributed among the several counties of the State in the proportion which said counties shared *during the year immediately preceding in the fees for licensing motor vehicles* designed exclusively for the purpose of carrying passengers and not used primarily for hire." (Italics supplied.)

It was suggested on oral argument that in the event 20 per cent of the motor fuels tax should not amount to $1,000,000 annually, the state would be liable and have to make up the difference from some other source. That contention is incorrect as we understand and construe the statute. If 20 per cent of the motor fuels tax should not amount to $1,000,000 annually (which is so improbable that it may be disregarded), the deficit would be paid to the counties out of the remaining 80 per cent of the Motor Fuels Funds in the state highway fund. But if the *improbable* should happen, as contended, i. e., that the entire motor fuels tax would not amount to $1,000,000 in a year, then of course there *would be no liability on the state* to make up the deficit, for the reason that this appropriation is made specifically out of the motor fuels tax; and of course whenever that is exhausted, there can be no further claim or demand under the appropriation.

Before passing to the next specification, we pause to again observe that there is a vast difference between the legal

status of state highways on the one hand, and county and district highways, and streets and alleys of cities and villages. The necessity for roads lies at the foundations of civil government. (29 C. J., p. 364, note 8 (d).) In a representative government the people exercise the elective franchise and they must reach the voting places; they must reach the seat of county government to discharge their duties as jurors and taxpayers, and transact county business; and they must have their mail and reach their markets for purposes of purchase and sale; they must also have roads over which they may travel to the seat of state government. All the major activities of daily life require thoroughfares for travel, and they are likewise necessary for use by peace officers in maintaining the public peace and private safety of the citizens. The United States government recognizes this public governmental duty in declaring certain roads as post roads and military highways for the movement of mails and troops and the dissemination of public intelligence. (Const., U. S., subd. 7, sec. 8, art. 1; 39 U. S. C. A., secs. 481–483, pp. 181–191; *Essex v. New England Tel. Co.*, 239 U. S. 313, 36 Sup. Ct. 102, 60 L. ed. 301, 304.)

Now after the state has provided for all these facilities for travel and transportation, cities and local communities may, for greater convenience and a more thorough service to all their local inhabitants, desire to further extend and improve the service by opening streets in cities and building feeder roads into the more remote rural and isolated parts of highway districts, and repair country roads already opened but needing improvement. They may determine these matters for themselves. (*Boise Development Co. v. Boise City*, 30 Ida. 675, 167 Pac. 1032; *State v. Nelson*, 36 Ida. 713, at 719, 213 Pac. 358; *Henderson v. Twin Falls County*, 56 Ida. 124, 50 Pac. (2d) 597, 101 A. L. R. 1151.) This may be done as a business or proprietary enterprise for the special benefit of the local residents and property owners. (*Carson v. City of Genesee*, 9 Ida. 244, 74 Pac. 862, 108 Am. St. 127; *Strickfaden v. Green Creek Highway District*, 42 Ida. 738, 248 Pac. 456, 49 A. L. R. 1057.)

The act here under consideration (chap. 16 of 1939 Laws) extends state aid and jurisdiction out over all of the

roads, highways, streets and alleys and makes the counties, districts, and municipalities, in which such thoroughfares are situated, *agents and representatives of the state for* carrying on the *state purpose* and disbursing the state funds allocated to such political divisions and municipalities. The constitution does not forbid or in any way inhibit such legislation or the carrying into effect such plan of public road building. If not forbidden, then of course it is permissible. (*In re Kessler,* 26 Ida. 764, 771, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Achenbach v. Kincaid,* 25 Ida. 768, 781, 140 Pac. 529.)

An examination of the statute (footnote 2) discloses that each county is required to designate a fund to be known as the "Motor Fuels Tax Fund" and that all money received from the state *under this act* shall be placed in that fund; and the fund shall then be used for meeting interest and sinking fund requirements for the current year "on any unpaid bonds issued by the said county for road and bridge purposes, or refunding bonds issued to take up such bonds." The county is also directed to "pay over to each highway and good roads district within such county, such portion of the balance of such Motor Fuels Tax Fund as shall be proportionate to the amount such district shared during the preceding calendar year in the fees for licensing motor vehicles. . . . . " It further provides that "the County shall apportion as and when needed for disbursement for current expenses for the construction and maintenance of highways any further balance of such Motor Fuels Tax Fund to the road and bridge fund of the said county, and the county may expend all or any portion thereof in the construction and maintenance of State highways in such county."

It is further provided that if "on the 30th day of December in each year, any moneys not needed for current expenses shall be returned to the State of Idaho by the county and shall be deposited in the State Highway Fund for future expenditure." This latter provision tends to further sustain the contention that the title to the money is at all times in the state, and the allocation and disbursement of the fund is to be done by the *state agency* (county or highway district) for the *state purpose* therein specified. From the foregoing and other pro-

visions of the act, it seems clear that the legislature, in exercising the law-making power of the sovereign (the state), has declared the *public purpose* for which these funds, raised by an excise tax, are to be applied, and has appointed the agencies through which they shall be expended for such purpose. Our attention has not been called to any specific provision of the constitution which places an inhibition upon the legislature doing the thing it has provided for in this act.

It is further contended that this act is violative of sec. 2, art. 8, of the constitution, in that it attempts to loan the credit of the state to highways, cities and counties. A careful analysis of the act convinces us that it does not run counter to that provision of the constitution. It does not attempt to loan the credit of the state to any municipality or corporation, nor does it create any indebtedness or liability to or in favor of such municipality or corporation. It simply allocates a definite percentage of certain excise taxes hereafter to be collected to the various counties and highways for the purposes therein specified.

It has also been argued that the act attempts to divert state funds to purposes other than a public or state purpose, which the court held in *State v. Parsons,* 58 Ida. 787, 80 Pac. (2d) 20, cannot be done. The contention is not sound, for the reason that building and acquiring roads and highways is of a highly public and governmental nature when conducted by the state in its sovereign capacity; and the money appropriated and allocated by this act is clearly all required to be devoted to the acquisition, upkeep and maintenance of roads. The fact that it authorizes and directs the use of a part of this ·appropriation for payment of principal and interest on road bonds already issued, is only another method adopted by the legislature in making payment of its own debt for roads already built, which the state is acquiring as state property and over which it is assuming governmental control.

*Berry v. Fox,* 114 W. Va. 513, 172 S. E. 896, is cited as a recent case from the supreme court of West Virginia, holding a very similar statute invalid, under constitutional provisions much like our sec. 1, art. 8, of the constitution. Judge Kenna in a concurring opinion says:

"The case now before us involves the sheer question of whether the state of West Virginia by act of the Legislature may undertake for a biennium to pay the sinking fund and interest of local debts. In my opinion, to do this violates the constitution, which states in express terms that the state shall not assume nor become responsible for the debts of counties, cities, townships, corporations, and persons."

The Texas court held to the same effect in *Road Dist. No. 4, Shelby County, v. Allred,* 123 Tex. 77, 68 S. W. (2d) 164.

On the other hand a somewhat similar condition arose in Florida, under a statute similar in most respects to that here in question, in the case of *Carlton v. Mathews,* 103 Fla. 301, 137 So. 815, 834, and the court said:

"If the Legislature can purchase a state road from private parties and make appropriation of money to pay the expense of such purchase, why can it not upon taking over for state purposes roads originally built as county and district projects with money advanced by such political subdivisions, properly and legally declare that reimbursement should be made, and appropriate funds for such purpose. Of course, the obligation of the state to reimburse its political subdivisions is not a *contractual obligation* such as may be sued upon and judgment obtained thereon; but it is a moral obligation, one which in equity and justice should and may be paid if the Legislature sees fit. If the Legislature of the State of Florida should determine that the Leon County Courthouse was needed for state purposes, and by enactment of the Legislature should take it over for such purposes, would it not be legal and proper for the enactment to appropriate state funds to reimburse Leon county for the money it had expended in the con-·struction of its courthouse? We think it would. By the same token cannot the Legislature, either at the time of designating and taking over county and district roads as state roads, or afterwards, declare they have been and are being taken over for a general state and public purpose and make appropriations to reimburse such counties and their districts in whole and in part?

"If the state had authority to build these roads *de novo*, or to build state roads paralleling these county and district projects, and appropriate funds to pay for such new construc-

tion, why should it not have the authority to levy taxes and appropriate the proceeds of the same to reimburse and pay to the counties the moneys expended and furnished in the construction of the roads so taken? We have before us this proposition: The sovereign state dealing with its political subdivisions has exercised its right to 'take over' the exclusive title, control, possession, and dominion of property built and constructed wholly or in part with county and district funds; and the Legislature has declared that this has been done and has further declared that the counties should be reimbursed for the property, and has levied a tax and made an appropriation of moneys to carry out its determination. . . . . (p. 835)

"There is no expression in the law, recognizing any contractual liability upon the part of the state. Any future sessions of the Legislature may change the program set forth in this act carrying out the' policy of the Legislature of 1931, by repealing the law providing for the second gas tax or passing a law appropriating the revenue derived from it to other state purposes. . . . .

(P. 836.) "We are of the opinion that the provisions of chapter 15659, Laws of Florida (House Bill 65X), Acts of 1931, Ex. Sess., providing for the levy of the second gas tax, and appropriating the moneys realized therefrom to the paying and reimbursing of counties and/or special road and bridge, or other taxing districts, for moneys by them expended upon, and advanced in the construction of roads, which, at the time of the passage of the act, had been or were taken over and designated as state roads, are not violative of either section 2, section 3, section 4, or section 6, of article 9 of the Constitution of Florida."

The holding of the Florida case seems to us more in harmony with the generally prevailing rule for measuring and adjudging the constitutionality of legislative acts. That rule is that where there is room for serious doubt as to the unconstitutionality of a legislative act, the doubt should be resolved in favor of the validity of the act. (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *State v. Dunbar,* 39 Ida. 691, 230 Pac. 33; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149; *Curtis v. Pfost,* 53 Ida. 1, 21 Pac. (2d) 73; *Garrett T. & S. Co. v. Pfost,* 54 Ida. 576, 33 Pac. (2d) 743.)

We fail to find sufficient grounds for holding the act before us unconstitutional. The alternative writ heretofore issued will be, and is, made permanent. No costs awarded.

Budge, Givens and Holden, JJ., concur.

Morgan, J., did not participate in the decision of this case on account of illness.