497 P.2d 47

**T. Stanley NELSON, Plaintiff-Appellant,**

v.

**Charles J. MARSHALL, Chairman, et al.,
Defendants-Respondents.**

No. 10729.

Supreme Court of Idaho.

May 15, 1972.

Weeks, Davis & Yost, Nampa, for plaintiff-appellant.

W. Anthony Park, Atty. Gen. and Phillip M. Barber, Asst. Atty. Gen., Boise, for defendants-appellees.

DONALDSON, Justice.

The pertinent facts giving rise to this appeal are not in dispute. On March 17, 1970, T. Stanley Nelson (plaintiff-appellant) filed a petition for a writ of prohibition to prevent the Idaho Water Resource Board from loaning money to Arves L. Christensen for the development of irrigation wells to be used in applying water to arid lands located near Payette, Idaho. The appellant is a taxpayer and has property rights adjoining the land under development by Mr. Christensen; his standing to sue was conceded by the respondents. The petition filed by the appellant in district court alleges that the Board does not have jurisdiction to make the challenged loan, for two alternative reasons: (1) the statutory provisions under which the Board is operating are unconstitutional; and (2) in approving the loan, the Board did not comply with those statutory provisions.

On April 20, 1970, a hearing on the appellant's petition was held in the Ada County district court which ruled that the equal protection clause of the Fourteenth Amendment to the United States Constitution is violated by the "special cases" lan-

guage contained in I.C. §§ 42–1754(b) [1] and 42–1756(a). The court went on, however, to hold that the objectionable words are severable and that without them the Board may loan funds to an individual without determining that he is a special case; the court also rejected the other contentions of the appellant and denied the requested writ of prohibition.

The final judgment of the district court was filed on 22 May 1970, and a notice of appeal and a cost bond were filed on 22 June 1970. Thereafter, in the latter part of 1970, the Idaho Water Resource Board went ahead and disbursed the loan sought to be prohibited by this action (in two installments, one on 29 September 1970 and one on 30 December 1970). In other words, the act sought to be restrained herein has already been performed.

## I

Before turning to the substantive questions raised by the appellant, we must dispose of a threshold issue raised by the respondents, who urge that this case has become moot and should therefore be dismissed by this Court. In support of their contention, the respondents cite Roberts v. Kartzke, 18 Idaho 552, 111 P. 1 (1910) and Bellevue Water Co. v. Stockslager, 4 Idaho 636, 43 P. 568 (1895), wherein the Court stated:

"The writ of prohibition will not issue where the act to be restrained has already been performed, even where the

act has been performed during the pendency of the application for the writ, for the reason that the writ would be without any effect whatever." [2]

The respondents argue that because the loan sought to be prohibited has already been made, the requested writ is no longer available; and since no other relief was pleaded, the case is moot and should be dismissed.

 The defendant's voluntary abandonment of the allegedly illegal action sought to be enjoined by the plaintiff does not necessarily make the case moot. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29 (1944). A fortiori, then, the defendant's unilateral performance of the act sought to be prohibited does not render the action moot. In either case, a dispute over the legality of the challenged practices remains to be settled. United States v. W. T. Grant Co., supra; Walling v. Helmerich & Payne, Inc., supra. Furthermore, where the defendant is likely to repeat the allegedly illegal conduct, the case is not moot. Securities and Exch. Comm'n v. Medical Comm. for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972); see United States v. W. T. Grant Co., supra; Walling v. Helmerich & Payne, Inc., supra. Moreover, where an issue of substantial public interest is presented, the appeal should not be dismissed

1. The pertinent part of I.C. § 42–1754 reads as follows:

"The Idaho water resource board revolving development fund shall be allocated for use:

\*　　\*　　\*　　\*　　\*

(b) As loans from the revolving development fund which may be approved by the board and made to irrigation districts, canal or irrigation companies, water users' associations, municipal or private corporations, or, *in special cases when approved by the board*, to individuals to finance project costs, provided, however, that no loans shall be made to finance feasibility studies except as a part of overall project costs." Emphasis added.

Similar language is also contained in I.C. § 42–1756(a).

2. 4 Idaho at 641; *accord,* Detweiler Mercantile Co. v. Babcock, 44 Idaho 777, 260 P. 162 (1927); Morehouse v. Little, 40 Idaho 114, 117, 232 P. 1099 (1924); Abels v. Turner Trust Co., 31 Idaho 777, 176 P. 884 (1918). *Contra,* Gooding Milling & Elevator Co. v. Lincoln County State Bank, 22 Idaho 468, 126 P. 772 (1912). *See also* Tryon v. Baker, 94 Idaho 222, 485 P.2d 964 (1971); Dorman v. Young, 80 Idaho 435, 332 P.2d 480 (1958); Chicago, M. & St. P. Ry. Co. v. Cardwell, 42 Idaho 25, 242 P. 977 (1926).

as moot. County of Madera v. Gendron, 382 P.2d 342 (Cal.1963) ; Di Giorgio Fruit Corp. v. Dep't of Employment, 56 Cal.2d 54, 13 Cal.Rptr. 663, 362 P.2d 487 (1961) ; Page v. Blunt, 126 Colo. 324, 248 P.2d 1074 (1952) ; People ex. rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769, 30 A.L.R.2d 1132 (1952), cert. den., 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952) ; Oliver v. Oklahoma Alcoholic Beverage Control Bd., 359 P.2d 183 (Okl.1961) ; Huffman v. Alexander, 197 Or. 283, 253 P.2d 289 (1953) ; Annot., 132 A.L.R. 1185 (1941) ; 5 Am.Jur.2d, Appeal and Error §§ 768 and 913 (1962) ; 73 C.J.S. Prohibition § 10d (1951) ; *see* United States v. W. T. Grant Co., *supra*; *cf.* Bogert v. Kinzer, 93 Idaho 515, 465 P.2d 639 (1970).

Applying these rules, we conclude that this appeal should not be dismissed as moot. A dispute over the legality of the challenged loan certainly remains to be settled. The defendant has not demonstrated that there is a reasonable expectation that similar loans will not be made in the future.[3] Finally, since statutory language was held unconstitutional in the court below, and since the constitutionality of the statute and the loan made thereunder are challenged on this appeal, questions of substantial public interest have been presented *for decision. For all these reasons, we must proceed to determine the merits of the case.*

### II.

Contending that all loans to individuals are unconstitutional, the appellant submits that the trial court erred in deleting the "special cases" language from the statutory provisions[4] in question because, the appellant argues, this phrase was not severable. We agree that the trial court erred in deleting these words, not for the reason suggested by the appellant, but because we

3. *Cf.* United States v. W. T. Grant Co., *supra*, 345 U.S. at 633, 73 S.Ct. 894, 97 L.Ed. 1303.

4. See note 1.

5. Memorandum Opinion, Clerk's Transcript, p. 40.

disagree with the court's conclusion that this phrase violates the equal protection clause.

The trial court's holding that the "special cases" language is unconstitutional was based upon its assumption that these words "would permit an unequal handling of one individual loan applicant as against another individual loan applicant."[5] This construction of these statutes is, in our opinion, unsound. We believe that the legislature did not intend to authorize discrimination against one individual loan applicant vis-a-vis another individual loan applicant. The legislature did indicate that in general certain loan applicants—irrigation districts, canal or irrigation companies, water users' associations, and municipal or private corporations—are to be given preference over individuals. But all individual loan applicants are to be treated equally; all the members of this class have an equal opportunity to prove that they are "special cases"—i. e., that they are as qualified for a loan as the corporate entities enumerated in the statutes. A statute which extends an equal opportunity to all those *belonging to the same class* is not a constitutionally proscribed special law. Gillesby v. Board of County Comm'rs of Canyon County, 17 Idaho 586, 599, 107 P. 71 (1910). The following rule was laid down in Ada County v. Wright, 60 Idaho 394, 92 P.2d 134 (1939) :

> "A special law applies only to an individual or number of individuals out of a single class similarly situated and affected, or to a special locality. A law is not special simply because it may have only a local application or apply only to a special class, if in fact it does apply to *all such classes* and *all similar localities* and to *all belonging to the specified class* to which the law is made applicable."[6]

6. 60 Idaho at 403 (emphasis in original). This rule has also been quoted in the following cases : Board of Comm'rs of Lemhi County v. Swensen, 80 Idaho 198, 327 P. 2d 361 (1958) ; State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009 (1948).

In the instant case, then, even though the "special cases" language applies only to the class of individual loan applicants, these statutes are not necessarily special laws, since the challenged language applies to all belonging to the specified class.[7] The propriety of this conclusion is buttressed by the rule that where a statute is susceptible to a constitutional construction, that construction must be adopted. *See, e. g.,* Williams v. Swensen, 93 Idaho 542, 467 P.2d 1 (1970); Rich v. Williams, 81 Idaho 311, 341 P.2d 432 (1959).

█ Our determination that the trial court erred in deleting the words "in special cases when approved by the board" makes it necessary to consider the appellant's further contention that these words render the statutes in question void for vagueness because they violate article 3, section 17 of the Idaho Constitution, which provides: "Every act or joint resolution shall be plainly worded, avoiding as far as practicable the use of technical terms." The appellant's argument is based upon the assumption that the words "special cases" constitute the statutory criteria for determining when a loan is to be granted to an individual. As indicated above, we construe these words to express a desire on the part of the legislature to give preference to the named corporate entities. In effect, the legislature has said that the Water Resource Board must use extra care when considering loan applications from individuals, presumably expressing a legislative belief that in general individuals are not as qualified for loans as these corporate entities.[8] This admonition, then, is not the statutory criteria for determining when a loan is to be granted to an individual, as contended by the appellant. Applications from individuals, like those from other applicants, must comply with the detailed requirements of I.C. § 42–1756; and specifically, the Board may approve a loan—to an individual or otherwise—only if it finds that:

"(1) The plan does not conflict with any extant Idaho state water plan;

---

7. When the statutes are properly construed, it could be argued that they improperly discriminate against individual loan applicants in favor of the corporate loan applicants listed therein. However, the trial court did not base its ruling upon this ground, and the appellant has not argued that the legislature acted improperly in giving preference to corporate loan applicants. Furthermore, since such discrimination did not prejudice the appellant (or anyone else) in this case (since the loan application was *granted*), the appellant is not entitled to question the validity of the classification. State v. Heitz, 72 Idaho 107, 238 P.2d 439 (1951); Poffenroth v. Culinary Workers Union Local No. 328, 71 Idaho 412, 232 P.2d 968 (1951).

In any event, a classification which favors corporate entities over individuals will be sustained if it relates reasonably to a legitimate public purpose. Frost v. Corporation Comm'n, 278 U.S. 515, 522–523, 49 S.Ct. 235, 73 L.Ed. 483 (1929); Dillingham v. McLaughlin, 264 U.S. 370, 44 S.Ct. 362, 68 L.Ed. 742 (1924); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837, 17 A.L.R. 873 (1921); Ex Parte Washer, 78 Cal.App. 759, 248 P. 1068 (1926); Pedrick v. First Nat'l Bank, 267 Wis. 436, 66 N.W.2d 154 (1954); Annot., 68 L.Ed. 742 (1925); 16 Am.Jur.2d, Constitutional Law § 520 (1964); 16A C.J.S. Constitutional Law § 504 (1956); *cf.* Crom v. Frahm, 33 Idaho 314, 193 P. 1013 (1920). The general preference for the corporate entities listed in I.C. §§ 42–1754(b) and 42–1756 (a) appears to relate reasonably to the legitimate public purposes of efficient development of the state's water resources and preservation of the state funds invested in this endeavor. The legislature may have reasonably concluded that more and better development would usually be accomplished by such corporate entities than by individual farmers. In general, as compared with individuals, the named corporate entities are probably more professionally operated, better capitalized, more financially responsible, and better equipped to develop more land and manage more water. Recognizing these differences, the legislature may have reasonably sought to give preference to the named corporate loan applicants, in order to optimize the benefit to be derived from the use of state funds. This preference has a "reasonable basis" and, therefore, does not offend the equal protection clause, even though it certainly is not expressed "with mathematical nicety." *See* Morey v. Doud, 354 U.S. 457, 463, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957).

8. See note 7.

(2) The proposed project is feasible from an engineering standpoint and economically justified, with studies showing a favorable benefit to cost ratio;

(3) The plan for development of the proposed project is satisfactory;

(4) The applicant is qualified and responsible;

(5) There is reasonable assurance that the borrower can repay the loan;

(6) That money in the revolving fund is available for the loan; and

(7) That the loan does not exceed $100,000 unless legislative approval has been obtained." [9]

This is the statutory standard for determining when a loan may be approved, and since it is applicable to all types of applicants, the challenged statutes are not void for vagueness on the ground suggested by the appellant.

### III

 The appellant contends that the loaning of state funds to a private individual violates the following portion of article 8, section 2 of the Idaho Constitution: "The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual * * *." This contention must be rejected, for two reasons: (1) a loan of state funds is not a loan of state "credit"; and (2) the loan made here is not "in aid of any individual" within the meaning of the constitutional prohibition. This provision was recently discussed in Engelking v. Investment Board, 93 Idaho 217, 458 P.2d 213 (1969), in which case this Court approved the loaning of state endowment funds to private corporations, as follows:

"[The loaning of credit clause of article 8, section 2] prohibits only loaning of the State's credit. *Idaho Const. art. 8, § 2,*

*does not prohibit the loaning of State funds.* The word 'credit' as used in this provision implies the imposition of some new financial liability upon the State which in effect results in the creation of State debt for the benefit of private enterprises. This was the evil intended to be remedied by Idaho Const. art. 8, § 2, and similar provisions in other state constitutions. Yet that particular evil is not presented by the investment of existing funds of the State, for no new State debts are created by such action.

* * * The credit clause of Idaho Const. art. 8, § 2, is intended to preclude only State action which principally aims to aid various private schemes. As the parties have noted, the loaning of funds by the State is always presumably of some benefit to the recipient of the funds. However, *where such a benefit is merely an incidental consequence of efforts to effectuate a broad public purpose, then it cannot be said to violate the credit clause of Idaho Const. art. 8, § 2.*" [10]

Since the credit clause does not prohibit the loaning of state funds, the loan challenged here does not offend that provision. Furthermore, this loan constitutes an effort to effectuate a broad public purpose; and, hence, for that reason also, it cannot be said to violate the credit clause. The appellant submits that because the loan made here will enable its recipient to make a profit for himself, the principal aim of this loan is to aid a private scheme. As pointed out in the *Engelking* case, however, "the loaning of funds by the State is always presumably of some benefit to the recipient of the funds." Nevertheless, such state action is not unconstitutional where it constitutes an effort to effectuate a broad public purpose. [11] Such a public purpose is evident in this case. The irrigation of

9. I.C. § 42–1756(c).

10. 93 Idaho at 221–222 (emphasis added; footnotes omitted); *cf.* Hansen v. Kootenai County Bd. of County Comm'rs, 93 Idaho 655, 471 P.2d 42 (1970). *See also*

Wood v. Sadler, 93 Idaho 552, 468 P.2d 42 (1970).

11. Engelking v. Investment Bd., 93 Idaho 217, 222, 458 P.2d 213 (1969); Davis v. Moon, 77 Idaho 146, 289 P.2d 614 (1955) (payment of dormitory bonds); Newland

arid land is a public purpose. Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369 (1896). In an arid state, like Idaho, even the irrigation of private lands is a matter of public concern. Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 248, 76 L.Ed. 1038 (1932); Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085 (1904). The·public nature of water resource use, conservation, and development has been recognized by the Idaho Legislature,[12] by the Idaho Constitution,[13] and by this Court. Poole v. Olaveson, 82 Idaho 496, 356 P.2d 61 (1960); Mountain Home Irrigation Dist. v. Duffy, 79 Idaho 435, 319 P.2d 965 (1957); Reynolds Irrigation Dist. v. Sproat, 69

Idaho 315, 206 P.2d 774 (1949). Since the loan challenged herein constitutes a legitimate effort to effectuate a broad public purpose, it is not "in aid of any individual" within the meaning of the prohibition contained in article 8, section 2 of the Idaho Constitution.

## IV

The appellant next contends that the continuing appropriation provided for in I.C. § 42–1752,[14] which established the Idaho Water Resource Board revolving development fund, is in violation of article 7, section 13 of the Idaho Constitution, which provides that: "No money shall be

---

v. Child, 73 Idaho 530, 254 P.2d 1066 (1953) (old-age assistance); State ex rel. Nielson v. Lindstrom, 68 Idaho 226, 191 P.2d 1009 (1948) (old-age assistance); Suppiger v. Enking, 60 Idaho 292, 91 P. 2d 362 (1939) (advances to state employees); cf. Hansen v. Kootenai County Bd. of County Comm'rs, 93 Idaho 655, 471 P.2d 42 (1970).

12. I.C. §§ 42–1731 and 42–1750:

"42–1731. *Water resource board—Declaration of intention.*—The welfare of the people of this state is dependent upon conservation, development and optimum use of our water resources. To achieve this objective and protect the waters of Idaho from diversion out of state, it is essential that a coordinated, integrated, multiple use water resource policy be formulated and a plan developed to activate this policy as rapidly as possible. It is in the public interest that these functions be carried out by a single state agency."

"42–1750. *Revolving fund—Public policy and purpose.*—It is in the public interest and it is the public policy of this state, in which there are vast areas of arid land, to develop and to financially assist in and support the development of the water resources of this state through the construction of water projects, including the rehabilitation, improvement, or extension of existing systems or facilities relating thereto, and to achieve that end, to create an Idaho water resource board revolving development fund to be used for that purpose."

13. Idaho Const. art. 15, § 1.

"§ 1. *Use of waters a public use.*—The use of all waters now appropriated, or that may hereafter be appropriated for

sale, rental or distribution; also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law."

Idaho Const. art. 15, § 7.

"§ 7. *State water resource agency.*— There shall be constituted a Water Resource Agency, composed as the Legislature may now or hereafter prescribe, which shall have power to formulate and implement a state water plan for optimum development of water resources in the public interest; to construct and operate water projects; to issue bonds, without state obligation, to be repaid from revenues of projects; to generate and wholesale hydroelectric power at the site of production; to appropriate public waters as trustee for Agency projects; to acquire, transfer and encumber title to real property for water projects and to have control and administrative authority over state lands required for water projects; all under such laws as may be prescribed by the Legislature."

14. "42–1752. *Establishment of Idaho water resource board revolving development fund.*—There is hereby established in the state treasury a special fund to be known as the Idaho water resource board revolving development fund. All money in the fund is appropriated continuously to the board to be used and administered by it for the purpose of developing the state's

water resources, and shall not be subject to the provisions of the Standard Appropriations Act of 1945 or section 67–3516, Idaho Code."

drawn from the treasury, but in pursuance of appropriations made by law." This contention is without merit; it has been made and rejected in the past, and further discussion would serve no useful purpose. Leonardson v. Moon, 92 Idaho 796, 451 P.2d 542 (1969); McConnel v. Gallet, 51 Idaho 386, 6 P.2d 143 (1931); *see* State ex rel. Williams v. Musgrave, 84 Idaho 77, 370 P.2d 778 (1962).

### V

The appellant's final constitutional objection is that I.C. § 42–1756, authorizing the loaning of state funds, violates article 4, section 18 of the Idaho Constitution,[15] because this statute does not expressly require that loans approved by the Water Resource Board be presented to the State Board of Examiners for approval. In the first place, it is doubtful that the right to *borrow* money from the Water Resource Board revolving fund can properly be considered a "claim against the state," which must be presented to the Board of Examiners for approval.[16] We find it unnecessary to pass upon this question, however, for even assuming arguendo that an approved loan is such a "claim," the appellant's contention still must fail. Approval by the Board of Examiners is provided for by the Idaho Constitution, and the constitutional mandate need not be expressly restated in the statute. Ada County v. Wright, 60 Idaho 394, 92 P.2d 134 (1939).[17]

### VI

After the appellant had completed the presentation of his evidence, the trial court granted the respondents' motion for dismissal of that portion of the appellant's claim which alleged that the respondents had acted arbitrarily and capriciously in approving the loan to Arves L. Christensen. The appellant contends that the trial court erred in granting this motion, which was made pursuant to I.R.C.P. 41(b). When a motion to dismiss is made in a non-jury case, the court may weigh the evidence; and if it finds that the plaintiff has failed to carry the burden of proof, judgment on the merits must be entered in favor of the defendant. Grieser v. Haynes, 89 Idaho 198, 404 P.2d 333 (1965); Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340 (1964); 9 Wright & Miller, Federal Practice and Procedure: Civil § 2371 (1971); *see* Meyer v. Whipple, 94 Idaho 260, 486 P.2d 271 (1971). In this case, the district court entered findings of fact which are fully substantiated by the record; moreover, a review of the appellant's evidence indicates a total failure to prove any arbitrary or capricious action on the part of the Board. Therefore, we conclude that the motion to dismiss was properly granted.

That portion of the judgment which holds unconstitutional statutory language contained in I.C. §§ 42–1754(b) and 42–1756(a) is reversed; the judgment is otherwise affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN and SHEPARD, JJ., and SCOGGIN, District Judge, concur.

---

15. "§ 18. *Board of examiners.*—The governor, secretary of state, and attorney-general shall constitute a board of examiners, with power to examine all claims against the state, except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law: provided, that in the administration of moneys in cooperation with the federal government the legislature may prescribe any method of disbursement required to obtain the benefits of federal laws. And no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."

16. *Cf.* State ex rel. Williams v. Musgrave, 84 Idaho 77, 370 P.2d 778 (1962); Davis v. Moon, 77 Idaho 146, 289 P.2d 614 (1955).

17. It should also be noted that there is no indication in the record that the loan made in this case was not approved by the board of examiners; the appellant contends only that the statute's failure to provide for such approval renders it unconstitutional.