[No. 28649. *En Banc.* July 7, 1942.]

ALVA M. BOWEN, *Respondent,* v. THE DEPARTMENT OF SOCIAL SECURITY, *Appellant.*[1]

[1]Reported in 127 P. (2d) 682.

The *Attorney General, R. C. Finley, Phil H. Gallagher,* and *Pat Guimont, Assistants,* for appellant.

*F. L. Morgan,* for respondent.

BLAKE, J.—Prior to June 7, 1941, respondent was awarded a senior citizen grant of $34 a month under initiative 141 (chapter 1, Laws of 1941, p. 3). On that date, conceiving he was entitled to $40 a month, respondent made a demand upon the director for "a fair hearing" under the provisions of § 8, p. 7 (Rem. Supp. 1941 § 9998-41), of the act, which, among other things, provides:

"*It shall be the duty of the department upon receipt of such notice to set a date for the fair hearing, such date to be not more than thirty days after receipt of notice.*" (Italics ours.)

More than thirty days having elapsed without action upon the demand, respondent gave notice of appeal to the superior court of Grays Harbor county in accordance with the provisions of § 9, p. 8, of the act (Rem. Supp. 1941 § 9998-42). The department interposed a motion to quash the notice of appeal because "the court has no jurisdiction herein for the reason and upon the ground that the fair hearing provided in section 8, of chapter 1 of the Laws of 1941 has never been had herein."

In the meantime, presumably acting upon respondent's demand, the department held "a fair hearing," which resulted in an award of $40 a month to respondent. Thereafter, the court of Grays Harbor county entered an order dismissing the proceedings because it appeared

". . . from the records and files in the cause and statement of counsel for the defendant that subsequent to the time the plaintiff appealed to this Court the Department of Social Security reviewed the plaintiff's case and granted the plaintiff's contention in full, and that by reason of such facts there is no longer any issue between the parties hereto, . . ."

By the order, respondent was allowed an attorney's fee of $75 in accordance with § 9, p. 8, of the act. The department appeals from the order, asserting that the court had no jurisdiction of the appeal and, therefore, was without authority to do more than dismiss it on that ground.

Respondent moves to dismiss the appeal to this court for the reasons that (1) we are without jurisdiction to entertain it, because the amount in controversy is less than two hundred dollars; and (2) because the appeal concerns a matter of costs only.

Section 4, Art. IV, of the constitution, defining the jurisdiction of this court, provides that "its appellate jurisdiction shall not extend to *civil actions at law* for the recovery of money or personal property when the original amount in controversy or the value of the property does not exceed the sum of two hundred dollars . . ." (Italics ours.) Respondent maintains that this proceeding is a *civil action at law* in contemplation of the inhibition. With this view we cannot agree.

One of the basic factors in the interpretation of a constitution is the historical background which provoked its various provisions. 1 Cooley's Constitutional

Limitations (8th ed.), p. 133; 11 Am. Jur. 677, § 63; *Codd v. McGoldrick Lbr. Co.*, 48 Idaho 1, 279 Pac. 298, 67 A. L. R. 580; *People v. Harding*, 53 Mich. 481, 19 N. W. 155; *State v. Kees*, 92 W. Va. 277, 114 S. E. 617, 27 A. L. R. 681.

In his work on Constitutional Limitations, Cooley wrote, p. 133:

"It is also a very reasonable rule that a State constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force."

And, again, as chief justice of the supreme court of Michigan, he said:

"And in seeking for its real meaning we must take into consideration the times and circumstances under which the State Constitution was formed—the general spirit of the times and the prevailing sentiments among the people. Every constitution has a history of its own which is likely to be more or less peculiar; and unless interpreted in the light of this history, is liable to be made to express purposes which were never within the minds of the people in agreeing to it." *People v. Harding, supra,* p. 485.

Now, in the light of the historical background of the limitation placed upon the jurisdiction of this court, can these proceedings be said to be a *civil action at law* in contemplation of the constitutional provision?

At the time the constitution was adopted, civil procedure was governed by the practice act of 1881. Code of 1881, p. 35, § 1, chapter 1, provided that "The common law of England . . . and the organic act and laws of Washington Territory, shall be the rule of decision in all the courts of this Territory." And § 2 provides that "There shall be in this Territory hereafter but one form of action for the enforcement or protection of private rights and the redress of pri-

vate wrongs, which shall be called a *civil action.*" (Italics ours.)

Of the manner of commencing *civil actions,* it was prescribed by § 59, p. 43, that "Civil actions in the several district courts in this Territory shall be commenced by the filing of a complaint with the clerk of the court in which the action is brought, and the issuing of a summons thereon:   . . ."

It hardly requires argument to demonstrate that the court proceedings provided for in § 9 of chapter 1, Laws of 1941, the senior citizens grants act, do not come within these provisions of the practice act of 1881. The court proceedings provided for in that act are not *commenced* in any court. They have their inception in the department of social security, and find their way to the courts through appeal—not by way of the issuance of summons.

Further than that, the functions now exercised by administrative bodies under legislative authority were practically unknown to American jurisprudence at the time our constitution was adopted; and, so far as we can ascertain, they were wholly unknown to our territorial jurisprudence. To say that court proceedings arising out of the exercise of such administrative functions are *civil actions* in contemplation of the limitation on this court's jurisdiction, contained in § 4, Art. IV, of the constitution, would make that provision "express purposes which were never within the minds of the people agreeing to it." *People v. Harding, supra.* What pertinent authorities there are on the subject lend support to the view that court proceedings flowing from controversies arising before administrative bodies are in no sense civil actions as they were understood at common law.

Colonel O. R. McGuire, a member of the American Bar Association's special committee on administrative

law, in an article published in 26 Georgetown Law Journal, 574, 589, says: " . . . administrative law is a separate and distinct branch of the law. It is not common law, equity, or admiralty law." This court has recognized the principle with respect to the industrial insurance act—that controversies arising under it are controlled by " 'special statutory proceedings exercised *in derogation of, or not according to, the course of the common law.'* " (Italics ours.) *Nafus v. Dept. of Labor and Industries,* 142 Wash. 48, 52, 251 Pac. 877.

It is also of some interest to remember that the limitation placed upon this court's jurisdiction in § 4, Art. IV, has never been recognized nor applied in actions of equitable cognizance—notwithstanding the code provides for "but one form of action . . . which shall be called a *civil action.*" (Italics ours.) *Fox v. Nachtsheim,* 3 Wash. 684, 29 Pac. 140; *Schmelling v. Hoffman,* 124 Wash. 1, 213 Pac. 478.

Passing to the second ground of the motion for dismissal of the appeal—the rule is, of course, well settled that appellate courts will not take jurisdiction of cases involving costs only. This court has consistently applied the rule. See *Crooks v. Georgetown Transfer Co.,* 133 Wash. 182, 233 Pac. 1118. The rule does not rest upon a *want* of jurisdiction, but *refusal* to take jurisdiction of moot cases. But there is a well-recognized exception to the rule. That is "where the case is not one of personal costs which the court has ordered one party to pay, but of costs which the court has directed to be paid out of a particular fund, in which case those interested in the fund may appeal." 2 Am. Jur. 906, § 98. *Angell v. Davis,* 4 Mylne & Craig's Chancery Rep. 360; *Trustees v. Greenough,* 105 U. S. 527, 26 L. Ed. 1157; *Nutter v. Brown,* 58 W. Va. 237, 52 S. E. 88, 1 L. R. A. (N. S.) 1083, 6 Ann. Cas. 94;

154

*Temple v. Lawson,* 19 Ark. 148. To the extent, at least, that it is composed of "Federal matching funds," the fund from which "senior citizens grants" are paid is essentially a *trust fund,* for the proper expenditure of which the state department of social security is responsible to the Federal government. The motion to dismiss the appeal is not well taken on either ground presented.

On the merits of the appeal, appellant contends that the trial court acquired no jurisdiction of the proceedings "upon the ground that the fair hearing provided in § 8, of chapter 1 of the Laws of 1941 has never been had herein." Appellant invokes the well-established rule that one claiming rights determinable, in the first instance, by an administrative board must exhaust his administrative remedies before appealing to the courts. We think, so far as these proceedings are concerned, respondent exhausted his administrative remedies when he made demand upon the department for a fair hearing. It was the duty of the director to hold a fair hearing within thirty days from receipt of the demand. This, the director failed to do. The respondent was not at fault. He had done all he could do to press his claim when he filed his demand for a fair hearing. To compel the department to act, he, of necessity, had to resort to the courts.

But appellant urges he should have come in by way of an application for mandamus. It seems to us there is something of an anomaly in this position. For, in order to stay in this court, the appellant has persuaded us that the procedural remedies provided for in the senior citizens grants act do not constitute a *civil action.* Yet appellant would also persuade us to relegate a senior citizen to mandamus—a distinctly civil action at law (*State ex rel. Polson v. Hardcastle,* 68 Wash. 548, 124 Pac. 110; *State ex rel. Hunt v. Okanogan County,* 153 Wash. 399, 280 Pac. 31)—to prod the de-

partment to the performance of a duty imposed upon it by the statute, but which, for some reason, it had failed to perform. To accede to such a proposition would, in many instances, relegate the senior citizen to two sessions in court: one in mandamus to compel action by the department on his demand for a fair hearing; the other, an appeal from an adverse order made after such fair hearing. We do not think the letter of the act demands any such result. Certainly such a consequence would be subversive of the spirit of the act.

The judgment will be affirmed, with allowance to respondent of one hundred and fifty dollars as attorney's fees on appeal.

ROBINSON, C. J., MAIN, BEALS, STEINERT, MILLARD, DRIVER, and JEFFERS, JJ., concur.

SIMPSON, J. (dissenting)—I dissent upon the ground that the trial court did not have jurisdiction.