191 P.2d 1009

STATE ex rel. NIELSON et al. v. LINDSTROM.

No. 7403.

Supreme Court of Idaho.

April 1, 1948.

Robert E. Smylie, Atty. Gen., and John A. Carver, Jr., J. R. Smead, and Robert B. Holden, Asst. Attys. Gen., for appellants.

SUTPHEN, District Judge.

Samuel F. Swayne, of Orofino, for respondent.

The State of Idaho, on relation of its State Auditor and Commissioner of the De-

partment of Public Assistance, brought this action against the executor of the estate of Frans G. Magnus, deceased, to recover amounts paid in old-age assistance to decedent during his lifetime and does not involve in the slightest what should be taken into consideration in the initial award of old-age assistance; therefore, authorities involving such questions are not in point herein.

The complaint, in brief, sets forth: that Frans G. Magnus during his lifetime made application for and was granted old-age assistance; that commencing in March 1943 the Department of Public Assistance paid him, in monthly installments each month to and including july 1946, the sum total of $1,651; that Frans G. Magnus died testate August 1, 1946, leaving an estate; that respondent was duly appointed and qualified as executor of the estate; that appellant duly filed claim with the executor for the amount of assistance paid; that the executor rejected the claim, and this suit properly ensued as provided by section 15-609, I. C. A. Idaho Trust Co. v. Miller, 16 Idaho 308, 102 P. 360.

The trial court sustained respondent's demurrer to the complaint and dismissed the action apparently accepting respondent's contention that the alleged transactions between the State and deceased amounted to a loan and that such a loan is unenforceable because repugnant to the inhibition contained in Section 2 of Article 8 of the Constitution of this State that: "* * * the credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, asociation, municipality or corporation."

Under the common law no recovery of money paid by the State for old-age assistance was allowable where payment was not made by accident, fraud or mistake. City of Worcester v. Quinn, 304 Mass. 276, 23 N.E.2d 463, 125 A.L.R. 707. Thus, any right the appellant may have to recover in this action must be based upon our statutes.

Provision, however, for recovery against the estates of recipients has been part of the law of this State continuously since March 2, 1943, when Chapter 119 of the Laws of 1943 became effective. Section 2 of such Act added Section 24-a to the Public Assistance Law of the State and read as follows: "Section 24-a. Recovery from recipients. On the death of any recipient, the total amount of assistance paid or relief granted under this Act shall be allowed as a preferred claim against the estate of such person and shall be subject only to the expense of the last illness, funeral expenses not to exceed $100.00, and expenses of administration of said estate. No claim shall be enforced against any real estate or personal property of a recipient while such real estate is occupied by the recipient, a surviving spouse, or a dependent, but the Statute of Limitations shall not begin to run against such claim so long as the collection thereof is prohibited, as hereinabove

provided. "Such claim shall be made by the county or, in cases of cooperative assistance, by the State on behalf of all participants contributing to such assistance." Chapter 119, 1943 S.L.

By an Act (Chapter 237, S.L.1947) the 1947 legislature repealed the above quoted section and in lieu thereof enacted the following provision for recovery from estates of recipients: "Section 24-a. Recovery From Estates. On the death of any recipient of old-age assistance, the total amount of assistance paid such recipeint under this act may, in the discretion of the State Department, be allowed as a claim against the estate of such person after reasonable funeral expenses, the expenses of the last illness, and the expenses of administering the estate have been paid. No claim shall be imposed against any real estate of the recipient while it is occupied as a home by a surviving spouse, or against any personal property of less that $100.00 in value. The State Department shall certify to the State Auditor the amount recovered from each estate as above provided, and a proper distribution thereof shall be made by the State Auditor in proportion to the amount of assistance contributed by the state and the federal government for such assistance." Chapter 237, 1947 Session Laws.

Thus, in view of the statute, the question before us is whether the granting of old-age assistance under the terms and conditions of our Public Assistance Law (S.L. 1941, Chap. 181; S.L.1943, Chap 119; S.L. 1945, Chap. 109; S.L.1947, Chap. 237) falls within the inhibitions of Section 2 of Article 8 of the Constitution of the State of Idaho.

It is insisted an action cannot be maintained against the estate of a deceased recipient for the recovery of the amount of assistance granted such recipient during his lifetime. Old-age assistance began in August, 1935, by the enactment by Congress of the Social Security Act, Title I, Chap. 531, Act of August 14, 1935, 49 U.S.Stat. at Large, p. 620, 42 U.S.C.A. § 301 et seq. Section 2 provided for old-age assistance. Paragraph (7) of Subdivision (a)—a part of Section 2 of the Social Security Act—read: "(7) Provide that, if the State or any of its political subdivisions collects from the estate of any recipient of old-age assistance any amount with respect to old-age assistance furnished him under the plan, one-half of the net amount so collected shall be promptly paid to the United States."

It will be noted paragraph (7) did not make it mandatory upon a state or any political subdivision of a state to collect anything whatsoever from the estate of any recipient of old-age assistance. That paragraph simply provided that if a state did collect from the estate of a recipient of old-age assistance, then and in such case, one-half of the net amount collected should be promptly paid to the United States. Thus, the state was left absolutely free to determine whether it would, or would not, col-

lect from the estate of a recipient, but if it decided to and did collect, then it was made mandatory that one-half of the net amount collected should be promptly paid to the United States.

About four years after the enactment of the Federal Social Security Act; to wit, August 10, 1939, the Congress amended it. By the amendment, paragraph (7) above quoted, was omitted; but a provision of similar import was included in the amendment in that by paragraph No. (2) of Section 303 (b) U.S.C.A. 42, it was and is provided as follows: "Provided, That any part of the amount recovered from the estate of a deceased recipient which is not in excess of the amount expended by the State or any political subdivision thereof for the funeral expenses of the deceased shall not be considered as a basis for reduction under clause (B) of this paragraph."

In other words, by that amendment, the Congress still left a state absolutely free to collect from the estate of a deceased recipient if it chose to, but provided that any part of the amount recovered, not in excess of the amount expended for funeral expenses should not be considered as a basis for reduction under clause (B) of the same paragraph.

The sole purpose of omitting paragraph (7) above quoted, from the amendment of 1939, was that Congress intended that a state should no longer be required to pay to the United States one-half of the net amount of whatever was recovered by a state from the estate of a deceased recipient of assistance. A most generous thing for the Congress to do in this: It gives a state, for instance Idaho, a much larger amount of money to use in avoiding placing the aged and needy in poor-houses, by granting assistance to those owning the homes in which they live and enabling them to continue to live in such homes until both husband and wife have passed on, after which, of course, they no longer require the use of a home. The generosity of the Congress does not end there. It also provides more money to meet the requirements of the needy and destitute who are not the owners of homes.

Morgan v. Department of Social Security, 14 Wash.2d 156, 127 P.2d 686, is cited in support of the contention that a state cannot recover from the estate of a deceased recipient of old-age assistance. It appears the opinion in that case also covered the companion cases of Laura M. Camfield and William L. Jacobson v. The Department of Social Security of the State of Washington. The question was not presented to the Washington court in the Morgan case, supra, as to whether the legislature of the State of Washington could, or could not, under the Washington Constitution, provide for the collection or· recovery of assistance granted a deceased recipient in his lifetime. That this is true cannot be questioned, because all three of the above named persons were very much alive, making application for and demanding assist-

ance under Washington's Senior Citizens Grants Act, which the Washington court passed on.

While the humanitarian purpose of our Public Assistance Law, which grants assistance to the deserving and needy, is not directly attacked, it is, however, indirectly attacked upon the ground—among others—that the law is unconstitutional; because, it is argued in effect that the transaction by and through which Frans G. Magnus, now deceased, was granted assistance, created a debt which amounted to a loan—hence, was repugnant to the inhibition contained in Sec. 2, Art. 8 of our Constitution providing that: "The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation."

■ The grant of old-age benefits under our Public Assistance Law appears to be unconditional as far as the recipient is concerned. It creates no obligation on his part to repay public assistance to which he was lawfully entitled. There are no provisions therein which condition the grant on either the non-ownership of property or the ownership of less than a prescribed minimum of property.

If respondent is right in his contention our Public Assistance Law is unconstitutional, even though it creates no obligation on the part of any recipient of relief to repay any part of the relief granted, it would, of course, carried to its logical conclusion, mean the legislature would be powerless to provide for any relief whatever to the deserving and needy, and that would be simply absurd.

■ The granting of aid to its needy aged is a well recognized obligation of the state and is a governmental function tending to promote the public welfare. Alameda County v. Janssen, 16 Cal.2d 276, 106 P.2d 11, 130 A.L.R. 1141; 41 Am.Jur. 690.

■ Thus, its character as to all eligible recipients having been determined to be public rather than private, it follows that the granting of such aid is not within the constitutional inhibitions unless the recovery features of the law above quoted made the law subject to such inhibitions. Williams v. Baldridge, 48 Idaho 618, 284 P. 203; State v. Snyder, 29 Wyo. 199, 212 P. 771; Alameda County v. Janssen, supra. Undoubtedly the state has the authority to provide for public assistance for its needy aged, and the governmental nature of the service determines its character as not giving or loaning the credit of the state. Suppiger v. Enking, 60 Idaho 292, 91 P.2d 362.

The law (1941 S.L., Chap. 181 at Sec. 1, Subd. (m) defines that: "(m) 'Needy aged' shall mean any person 65 years or older, whose income and sources of subsistence are insufficient to supply him with the common necessities of life commensurate with his needs and health, * * *."

The statute, in line with modern ideas, makes it possible in many cases to avoid placing the needy aged in institutions and

contemplates the granting of assistance to those who may own the home in which they live or other property as well as to those absolutely destitute, if their income and sources of subsistence are not sufficient to meet the statutory standards. Under these provisions the recipient of public assistance is not required to liquidate all of his property. Ofttimes the recipient continues to live in his own home, which he is able to preserve for use during his lifetime and for the use of his widow during her lifetime after his decease. This method of caring for the needy aged has proven far superior in many cases to placing the needy aged in institutions. It has not only proven to be more efficient and economical from the State's standpoint, but more humanitarian, providing the recipient with a more normal existence, freeing him of much of the stigma and many of the hardships and disagreeable features of life in an institution.

These recovery provisions, supra, have nothing to do with the determination of the eligibility of any applicant for assistance. Whether he will or will not leave an estate when he dies makes not one iota of difference. The benefit received by the recipient who leaves an estate is no more than that of the recipient who happens to have none.

In the light of our determination that the granting of aid to the needy aged by the State does not fall within the inhibitions of the constitution against giving or loaning the credit of the State to an individual, it is difficult to see how the recovery features of the Public Assistance Law can be said to be giving or loaning the credit of the State.

The liability of the State is in no way increased by the presence of these recovery provisions in the law. The State does not obligate itself to do anything more because of such provisions. However, it does receive the benefit of the provisions in question and should, it seems, be classed a recipient of credit rather than the giver thereof. The conflict of interest here is not between the State and its needy aged. It is between the State and the heirs, next of kin or other distributees of the estates of the deceased recipients. "The right to dispose of one's property by will, and the right to have it disposed of by the law, after decease, is created by statute, and therefore the state may impose such conditions upon the exercise of this right as it may determine." Bankers' Trust Company v. Blodgett, 260 U.S. 647, 43 S.Ct. 233, 234, 67 L.Ed. 439, quoting Id., 96 Conn. 361, 114 A. 104.

Respondent says, however, that: "To sustain the repayment of old age assistance by virtue legislature plenary power to regulate descent and inheritance, is to violate Section 19 of article 3, of the Constitution of the State of Idaho because this (is) class legislation, placing burdens on the aged-needy not imposed upon other recipients from the State."

The section of the constitution last referred to prohibits the legislature from

passing local or special laws in certain enumerated cases, among which is listed: "affecting estates of deceased persons * * *" and "changing the law of descent or succession."

The repayment of old-age assistance provision of our Public Assistance Law appears to be general rather than special in its terms, as it operates upon all the aged needy and their estates in like situations.

"A statute is general if its terms apply to, and its provisions operate upon, all persons and subject-matters in like situation." Jones v. Power County, 27 Idaho 656, 150 P. 35, 37; In re Bottjer, 45 Idaho 168, 260 P. 1095.

"A special law applies only to an individual or number of individuals out of a single class similarly situated and affected, or to a special locality. A law is not special simply because it may have only a local application or apply only to a special class, if in fact it does apply to all such classes and all similar localities and to all belonging to the specified class to which the law is made applicable. Mix v. Board of County Commr's, etc., 18 Idaho 695, 705, 112 P. 215, 32 L.R.A.,N.S., 534; Hettinger v. Good Road District No. 1, 19 Idaho 313, 318, 113 P. 721; In re Crane, 27 Idaho 671, at page 690, 151 P. 1006, L.R.A.1918A, 942." Ada County v. Wright, 60 Idaho 394, at page 403, 92 P.2d 134, 138.

"The rule is that before a legislative enactment will be held to be unconstitutional, it must clearly appear to be so." Bannock County v. Citizens' Bank & Trust Co., 53 Idaho 159, at page 176, 22 P.2d 674, 680.

The case, therefore, will be reversed and the trial court directed to overrule respondent's demurrer to the complaint. Costs to appellant.

GIVENS, C. J., HOLDEN, J., and McDOUGALL, D. J., concur.

MILLER, Justice (dissenting).

On August 14, 1935, the 74th Congress, Sess. 1, Ch. 531, enacted the Social Security Act, 42 U.S.C.A. § 301 et seq. Title I thereof provided, "Grants To States For Old-Age Assistance." When used in Title I of said Act the term of old-age assistance means money payments to aged individuals. Section 1 of said Title made an appropriation and the sums appropriated and made available under said Act were to be used in matching payments with states which had submitted plans to be approved by the Social Security Board as established by Title VII of the Act and under state plan for old-age assistance.

Section 2 provides for state old-age assistance and subsection (a) thereof is as follows: "(a) A State plan for old-age assistance must (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them; * * *."

Other provisions of subsection (a) are enumerated.

Paragraph (7) thereof is as follows: "(7) provide that, if the State or any of its political subdivisions collects from the estate of any recipient of old-age assistance any amount with respect to old-age assistance furnished him under the plan, one-half of the net amount so collected shall be promptly paid to the United States."

From section 2, subsection (a) it manifestly appears that the State plan for old-age assistance is mandatory and must contain certain prescribed requirements in order to entitle a state to "Grants to States for Old-Age Assistance under the Social Security Act." We particularly invite attention to paragraph (7), which authorized a state to collect from the estate of a recipient of old-age assistance any and all amounts paid under the plan. In other words, any right and authority of a state to collect from the estate of a recipient of old-age assistance must come from and through the provisions contained in paragraph (7) aforesaid, and without such authority a state is not entitled to file a valid claim against the estate of a deceased recipient or maintain an action for any amount whatsoever, irrespective of the manner in which an estate of a recipient of old-age assistance was acquired, that is, whether the recipient had covered up property or income at the time of making application for assistance, or after being awarded assistance he had come into property and income which he did not report and which was sufficient to provide him in such manner that assistance was no longer necessary.

The complaint in this case shows that it is an action in debt. It also shows that the deceased (Frans G. Magnus) was paid the aggregate sum of $1,651 for old-age assistance; and that no part of the said sum has been repaid to the state, and that there is now due and owing the state of Idaho the said sum of $1,651.

The statutory provision under which the action was commenced and is sought to be maintained is as follows: "Section 24-a. Recovery From Estates. On the death of any recipient of old-age assistance, the total amount of assistance paid such recipient under this act may, in the discretion of the State Department, be allowed as a claim against the estate of such person after reasonable funeral expenses, the expenses of the last illness, and the expenses of administering the estate have been paid."

In the case of State ex rel. Dean v. Brandjord et al., 108 Mont. 447, 92 P.2d 273, 279, being a mandamus proceeding to compel payment of full amount of monthly old-age assistance, it is said: "When the whole subject of relief for the aged indigent is taken into consideration, when the history of federal and state legislation is given proper effect, when the national plans and the subsequently enacted state plans of the different states are understood, it would seem that none of the state plans, including our own, were ever devised to stand or operate without the cooperation

of the federal government. [Authority]. If this be true, and we think that it is beyond question the outstanding theory of the whole matter, then it is obvious that our law must be construed, *not as an independent Act, but in conjunction with the federal Act, that is, the two Acts must be administered together as a unified code of laws enacted by Congress and the state legislature for the complete and comprehensive control of the subject."* (Emphasis ours.)

We have indicated that authority for any activity by a state incident to recovery or the collection of payments from the estate of a deceased recipient was embodied in section 2 of Title I of the Social Security Act as originally enacted. Section 2, of the original Act, was subsequently designated as Section 302, and the provision contained in paragraph (7) of section 2, as originally enacted, was repealed and in the case of Morgan v. Department of Social Security, 14 Wash.2d 156, 127 P.2d 686, 693, it is said: "It is evident that there is a conflict between the provisions of the Federal act and those of the state statute. In the portion of the Federal act above quoted is found the following: '(a) A State plan for old-age assistance must * * * (7) effective July 1, 1941, provide that the State agency shall, in determining need, take into consideration any other income and resources of an individual claiming old-age assistance.'"

Accordingly, any former provision that a state or its political subdivisions might collect from the estate of a recipient of old-age assistance is no longer authorized by the Social Security Act, and, which is the only source of authority of states and/or their political subdivisions, any claim of the state against the estate of Frans G. Magnus, deceased, or the commencement of an action against Nels Lindstrom, the executor of his estate, is a nullity, and cannot be sanctioned.

In support of the statement that any attempted recovery is a nullity because unauthorized by the Federal act, we here mention that there is also, another reason why no recovery is permissible and that is that the action was a direct action addressed to the original rather than the appellate jurisdiction of the court. Thus, we are confronted with two propositions, (1) that no recovery can be had for the reason that there is no authorization therefor by the Federal act, and (2) that the court had no jurisdiction in that the only right the court had in the premises was under and through its appellate jurisdiction.

In the case of Bowen v. Department of Social Security, 14 Wash.2d 148, 127 P.2d 682, 684, it is said:

"At the time the constitution [State] was adopted, civil procedure was governed by the practice act of 1881. Code of 1881, p. 35 Section 1, chapter 1, provided that: 'The common law of England * * * (I.C.A. 70-116) and the organic act and laws of Washington Territory shall be the rule of decision in all the courts of this

Territory.' And § 2 provides that: 'There shall be in this Territory hereafter but one form of action [I.C.A. 5-101] for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a *civil action.*' * * *

"It hardly requires argument to demonstrate that the court proceedings provided for in § 9 of chapter 1, Laws of 1941, the senior citizens grants act, do not come within these provisions of the practice act of 1881. *The court proceedings provided for in that act are not commenced in any court. They have their inception in the department of social security, and find their way to the courts through appeal—not by way of the issuance of summons.* [Emphasis ours.]

"Further than that, the functions now exercised by administrative bodies under legislative authority were practically unknown to American jurisprudence at the time our constitution was adopted; and, so far as we can ascertain, they were wholly unknown to our territorial jurisprudence. To say that court proceedings arising out of the exercise of such administrative functions are civil actions in contemplation of the limitation on this court's jurisdiction, contained in § 4, art. IV, of the constitution, would make that provision 'express purposes which were never within the minds of the people in agreeing to it.' People v. Harding, supra [53 Mich. 481, 19 N.W. 155]. What pertinent authorities there are on the subject lend support to the view that court proceedings flowing from controversies arising before administrative bodies are in no sense civil actions as they were understood at common law.

"Colonel O. R. McGuire, a member of the American Bar Association's special committee on administrative law, in an article published in 26 Georgetown Law Journal, 574, 589, says: '* * * administrative law is a separate and distinct branch of the law. It is not common law, equity, or admiralty law * * *.' "

The case of Morgan v. Department of Social Security, 14 Wash.2d 156, 127 P.2d 686, 692, 708 deals extensively with Title I of the Social Security Act, and the adoption of the plan submitted by the state of Washington through the provisions of initiative 141, and in accordance with the requirements of the act and the approval of the Social Security Board as provided in Section 302 of the Act. Contained therein it is said:

"A transcript of the minutes of the meeting of the Federal social security board at which initiative 141 was considered, contains the following:

" 'Section Three, subsections (g) and (h), of this initiative measure are in violation of the provisions of the Social Security Act, which became effective, July 1, 1941, in that the state agency may disregard certain "income and resources" in determining whether an applicant is eligible for old-age assistance; and may also be in violation of presently effective provisions

of Social Security Act prior to July 1, 1941, since the act does not allow Federal participation in a plan under which old-age assistance may be paid to an individual who is not "needy." ' * * *

"As above stated, recipients are needy persons, and entitled to grants under the statute. This has never been disputed. The disputed questions involve the claims of recipients to grants in larger sums than allowed by the department.

"It is evident that there is a conflict between the provisions of the Federal act and those of the state statute. In the portion of the Federal act above quoted is found the following: '(a) A State plan for old-age assistance must * * * (7) effective July 1, 1941, provide that the State agency shall, in determining need, take into consideration any other income and resources of an individual claiming old-age assistance.' * * *

"By subparagraph (h) of the same section, it is provided that: 'Resources' shall mean any property which the applicant owns legally or beneficially, excepting therefrom: * * * (3) The homestead, home or place of residence of applicant or the spouse of applicant. * * *'

"The language of § 3 itself shows that the items which are excepted from income, and thereafter excepted from resources, including the ownership or occupation of a dwelling, are in fact income and resources, the statute providing, however, that such items shall not be considered when computing the amount of grants to persons entitled to the benefit of the act. The state statute, then provides that certain income or resources shall not be considered, which items the Federal act says shall be considered, in fixing the amount of grants by the state agency which are to be matched by Federal funds. * * *

"We now hold that § 3, sub-paragraphs (g) and (h), of initiative 141, are not in accord with the provisions of the Federal Social Security Act, and that the Federal board correctly held that these sub-paragraphs 'are in violation' of that act.

"The act contains other references to the Federal Social Security Act, which show clearly that initiative 141 was intended to keep pace with the Federal act and be administered always in view of the Federal act, as the same might from time to time be amended, or as the administration thereof might be changed. * * *

" 'The federal and state statutes represent "a cooperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 526, 57 S.Ct. 868, 880, 81 L.Ed. 1245, 109 A.L.R. 1327.' "

From the foregoing it readily appears that the Washington Public Assistance Act, as embodied in initiative 141, was endeav-

oring to allow recipients certain income and resources, and independent of Grants-In-Aid, which was not provided for in Title I of the Social Security Act, and that such seemingly inconsequential provisions as contained in subparagraphs (g) and (h) are in violation of the Social Security Act, due evidently to the closely knit adherence to the cooperative legislative effort of state and national governments in carrying out a public purpose common to both. If the board held that the provisions contained in subparagraphs (g) and (h) which allowed certain income and resources not allowed by the Social Security Act to be disregarded in determining the amount of assistance to be awarded a recipient then there is no need to speculate as to what said board would hold on the question of the validity of the state of Idaho to file a preferred claim against the estate of Frans G. Magnus, deceased, or to institute a suit in the District Court against his executor under the provisions of section 24-a, supra, for the full amount of Grants-In-Aid lawfully paid Magnus as a recipient of old-age assistance, instead of handling it as a departmental matter in accordance with law, or that the State might assume that any such provision was legal since paragraph (7) providing for recovery as contained in the original Social Security Act had not been lifted therefrom and is still contained therein.

The majority opinion states that, "The granting of aid to its needy aged is a well recognized obligation of the state and is a governmental function tending to promote the public welfare." In support of such statement we are cited to the case of Alameda County v. Janssen, 16 Cal.2d 276, 106 P.2d 11, 130 A.L.R. 1141; 41 Am.Jur. 690. Said case deals with an Act of the legislature of California of 1929, providing financial assistance to needy aged who met certain requirements, and whose property did not exceed specified values. There were no matching funds available or involved. It is of no assistance in determining whether a state may collect any or all of the amounts paid a recipient of old-age assistance.

The majority opinion treats the Public Assistance Act as the only legislation involved, and that Section 24-a, Session Laws 1947, as the sole and only measure of determining the right of the State to recover any payments made to recipients of old-age assistance. Said opinion does not take into account that payments of old-age assistance is a cooperative function and that without such cooperation the State would be powerless to act.

In the case of Bowen v. Department of Social Security, 14 Wash.2d 148, 127 P.2d 682, a proceeding wherein the respondent Bowen made a demand upon the Director of the Department of Social Security of the State of Washington, to increase his award of $34 a month to $40 a month and demanded "a fair hearing" under the provisions of section 8, p. 7, of the act, which provided that said hearing should be had

not more than 30 days after the receipt of notice. More than 30 days having elapsed Bowen gave notice of appeal to the superior court of Grays Harbor county. A motion to quash the notice of appeal was interposed by the department and the Supreme Court in passing upon the matters involved said: "To the extent, at least, that it is composed of 'federal matching funds' the fund from which 'Senior Citizens Grants' are paid is essentially a trust fund, for the proper expenditure of which the state department of social security is responsible to the federal government."

The fact that 24-a, Laws of 1947, authorizes a recovery of all amounts, without reservation, theretofore paid recipients of old-age assistance, it is apparent that the payment of assistance to recipients, which may subsequently be recovered, must be characterized as a loan, otherwise there could be no provision for recovery, and under those conditions, of course, would be offensive to Section 2 of Article 8 of the Constitution which inhibits the loaning of the credit of the state to any individual.

In the case of Burgdorf et al. v. Department of Social Security, 14 Wash.2d 209, 127 P.2d 709, practically the same questions are involved as in the case of Morgan v. Department of Social Security. I quote therefrom, not so much for the purpose of showing that grants-in-aid to recipients under the Washington Public Assistance Act, as embodied in initiative 141, must be made in accordance with the provisions of the Social Security Act and not in accordance with the state Act allowing income and resources in addition to the payment of sums for old-age assistance, but more particularly for the purpose of emphasizing a matter heretofore pointed out, that is, that any controversy between a recipient and the department of social security must be determined in the first instance in the department and find its way to the courts only through appeal and not by way of issuance of a summons. In this case the department had deducted $11 from each of the recipients because of home ownership, combined living and the use of water without payment. The recipients sought a hearing before the Pierce County Welfare Department which recommended the deduction and the recipients being dissatisfied with the amounts of grants, recommended by the County Welfare Department, requested a fair hearing thereon before the director of the state department. The hearings were had, and thereafter the director approved the recommendations of the Pierce county welfare department, and awarded each applicant a grant in the sum of $29 each month. "The recipients, being of the opinion that they were each entitled to a grant in a greater amount, appealed from the departmental orders to the superior court for Pierce county. After a hearing, the trial court reversed the departmental orders, and remanded the cases to the department, with instructions that each grant should be increased, and payment

thereof in the increased amount be made retroactive to date from December 4, 1940. From these judgments the department of social security has appealed. The cases have been consolidated for hearing before this court."

The judgments in the cases at bar were reversed with instructions to enter judgments affirming the orders of the department.

In the case of Halsell et al. v. Department of Social Security, 14 Wash.2d 709, 127 P.2d 711, something of the same proposition as contained in the case of Burgdorf v. Department of Social Security, supra, was up for determination. The Grays Harbor county welfare department recommended that a grant be made to Mr. Halsell of $30 per month, and that a similar grant be made in favor of Mrs. Halsell. "The recipients, being dissatisfied with the recommendation of the county welfare department, requested a fair hearing before the director of the department, which hearing was granted and the testimony reduced to writing. Based upon the record so made, the director rendered his decision June 19, 1941, affirming the action of the county welfare department, and awarding a grant to each recipient in the amount of thirty dollars per month. Feeling aggrieved by the decision of the director, the recipients appealed to the superior court, where the matter was heard upon the record made before the de-

partment, no new evidence having been offered by either party."

The controversy grew out of the fact that each recipient sought a grant of $40 and there was deducted from said amount $7 because of home ownership, and $3 because of combined living.

Further quoting from Halsell et al. v. Department of Social Security, supra:

"* * * In accordance with the conclusions of law, the court entered its decree remanding the proceeding to the department, with directions to revise the awards by eliminating therefrom the deductions above referred to. From this decree the department of social security of the state of Washington has appealed to this court."

"The trial court was evidently of the opinion that the deductions above referred to, made by the director, were not in accordance with the provisions of initiative 141. * * *

"We have determined this question contrary to respondents' contention. As stated in our opinion in the consolidated cases of Morgan et al. v. Department of Social Security, [14 Wash.2d 156], 127 P.2d 686, we are convinced that initiative 141 by its own terms must be construed in connection with the Federal statute, and that certain provisions of the state statute are not in harmony with the Federal laws and must be disregarded."

The judgment appealed from was reversed with instructions to enter judgment affirming the order of the department.

In Vol. 42, Am.Jur., p. 698, sec. 254:

"The Federal courts have established a set of principles known as the 'primary jurisdiction doctrine,' developed in cases construing the Interstate Commerce Act [49 U.S.C.A. § 1 et seq.], but given general application to Federal administrative bodies other than the Interstate Commerce Commission, and applied by the Federal courts in relation to state administrative bodies. [Woodrich v. Northern Pac. R. Co., 8 Cir., 71 F.2d 732, 97 A.L.R. 401.]

"The doctrine of primary jurisdiction is that the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal, where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. The principle is derived from a consideration of the nature of the question and of the inquiry and the action required for its solution. The courts will not take jurisdiction even temporarily, pending an investigation before the administrative tribunal, so as to grant an injunction against rates alleged to be unreasonable or discriminatory. The doctrine is applied in the face of statutes which expressly purport not to abridge or alter existing remedies on the ground that such a provision cannot be construed to continue rights which would be absolutely inconsistent with the statute." (Innumerable authorities are cited in support of the foregoing doctrine.)

In support of the doctrine that an action may not be instituted in a district court because of a controversy arising before an administrative department, we cite the case of Peterson v. Livestock Commission, Mont., 181 P.2d 152, 157, wherein it is held:

"It is generally held that a statute which attempts to place the court in the place of a commission or board to try a matter anew as an administrative body is unconstitutional as a delegation to the judiciary of non-judicial powers. A few of the many cases so holding are the following: Steenerson v. Great Northern Ry. Co., 69 Minn. 353, 72 N.W. 713; State v. Great Northern Ry. Co., 130 Minn. 57, 153 N.W. 247, Ann.Cas. 1917B, 1201; In re Hunstiger, 130 Minn. 474, 153 N.W. 869; State ex rel. Dybdal v. State Securities Comm., 145 Minn. 221, 176 N.W. 759; State Board of Medical Registration v. Scherer, 221 Ind. 92, 46 N.E.2d 602; In re Fredericks, 285 Mich. 262, 280 N.W. 464, 125 A.L.R. 259; Mojave River Irr. Dist. v. Supreme Court, 202 Cal. 717, 262 P. 724; Borreson v. Department of

Public Welfare, 368 Ill. 425, 14 N.E.2d 485; In re Opinion of Justices, 85 N.H. 562, 154 A. 217.

"Statutes providing for appeals somewhat similar to that under consideration have been held valid by interpreting them as not granting trials de novo in the full sense of that expression but as conferring authority for the court to pass upon the lawfulness only of the order of the board or commission. Examples are: Morgan v. Department of Social Security, 14 Wash.2d 156, 127 P.2d 686; Investors Syndicate v. Hughes, 378 Ill. 413, 38 N.E.2d 754; Lloyd v. City of Gary, 214 Ind. 700, 17 N.E.2d 836.

"The only proper questions that may be tried by a court on appeal from an order such as the one here involved is whether the commission acted capriciously or arbitrarily or without jurisdiction or authority under the law. People of State of New York ex rel. New York & Queens Gas Co. v. McCall, 245 U.S. 345, 38 S.Ct. 122, 62 L.Ed. 337; State v. State Board of Equalization, 56 Mont. 413, 185 P. 708, 186 P. 697."

Since the majority opinion has been rewritten, there is included therein the case of City of Worcester v. Quinn, 304 Mass. 276, 23 N.E.2d 463, 125 A.L.R. 707. I fail to see wherein said authority is of any assistance when applied to the majority opinion. I will refer to said matter later.

Referring to the case of Alameda County v. Janssen, supra, that was an action in mandamus to compel Janssen as Chairman of the Board of Supervisors of Alameda County to execute certain releases of liens and cancellation of restrictive agreements with respect to real property of the recipients of financial aid granted under the provisions of old-age security act of the state. In 1937 the California Legislature amended sections 2224 and 2225 of the Welfare and Institutions Code, into which section 4 of the Old-Age Security Act had been incorporated, to eliminate the provisions of such liens as well as the provisions making the aid a debt of the recipient to the state and county. Section 2225 was amended to provide that, "all liens and mortgages heretofore created under the provisions of said chapter are hereby released and the board of supervisors of each county * * * are hereby directed and authorized to execute and record appropriate instruments of release." Janssen, as chairman of the board of supervisors, refused to execute said liens and releases on the grounds that it violated section 31 of article IV of the California Constitution, prohibiting the legislature from making or authorizing any gift of public money and also that it violated prohibitions in the United States and California Constitutions against the passage of any law impairing the obligation of contracts. The court in passing on the question, construed the constitutional provision as follows [16 Cal.2d 276, 106 P.2d

244

14]: "Section 31 of article IV of the California Constitution prohibits the legislature from making or authorizing a gift of public money or thing of value to any individual or corporation. The next clause, however, provides that nothing in this section shall prevent the legislature from granting aid pursuant to section 22 of article IV which authorizes the granting of aid to indigent aged. Therefore the release of a lien by a county, pursuant to section 2227 of the Welfare Code, does not constitute a violation of section 31, article IV, if (1) it is a gift of public money or thing of value, or (2) it is a grant of aid to indigent aged under section 22 of article IV."

It will be observed that section 22 of article IV of the Constitution, authorized the granting of aid to indigent aged. We have no such provision in our constitution and it was because the liens, mortgages and contracts established an existing debt, that Janssen, even in the face of section 22 of article IV, aforesaid, and the legislation that was enacted, refused to sign releases of the liens that had been incurred by the recipients of aid to indigent aged. The majority opinion recites, "Thus, in view of the statutes, the question before us is whether the granting of old-age assistance under the terms and conditions of our Public Assistance law * * * falls within the inhibitions of Section 2 of Article 8 of the Constitution of the State of Idaho." What brings the question to the attention of this court? Is it because of there being a public assistance act, or because the legislature has seen fit to amend said act by including therein a provision for a recovery of the amount of assistance paid a recipient. Section 24-a, supra, is not a part of the substantive law of this jurisdiction. But, to the contrary, is purely procedural, and, incidentally, is the first resort in an attempt to establish a collection agency of the Public Assistance Act. The majority opinion observes, "If respondent is right in his contention that the Public Assistance law is unconstitutional, even though it creates no obligation on the part of any recipient of relief to repay any part of the relief granted, it would, of course, carried to its logical conclusion, mean the legislature would be powerless to provide for any relief whatever to the deserving and needy, and that would be absurd." From the foregoing, it is made to appear that section 24-a is superior to all other phases of the Public Assistance Act. I know of no one who asserts, or insists, that the payment of old-age assistance, in the first instance, violates the credit provision of section 2, article VIII of our constitution. It is the enforcement or attempted enforcement of the recovery provision, written into the law, that is the "fly in the ointment." Without such recovery provision no one would contend that the act is offensive to the constitution. The enforcement of the recovery provision, however, is questioned and objected to because

its enforcement of necessity shows that the payment of old-age assistance to a recipient is in the nature of a loan. If it were not in the nature of a loan it could not be recovered and the contention, as I see it, is that section 24-a, the recovery provision, is unconstitutional and a nullity, and therefore incapable of enforcement.

I submit that before the State can recover from the estate of a deceased recipient of assistance there must exist an obligation on the part of the estate to pay the amount sought to be recovered. In other words, a contractual obligation in some form or manner between the State and the deceased recipient, during his lifetime must be established. In speaking of said matter, relative to the right of a state to recover from the estate of a deceased recipient of old-age assistance, the Social Security Act of August 14, 1935, 49 U.S.Stats. 620, Title 42, U.S.C.A. §§ 301—306 was mentioned in the case of City of Worcester v. Quinn, supra [304 Mass. 276, 23 N.E.2d 465], and therein it is said:

"This act of Congress provided for the grant of Federal funds for old age assistance to such States as should adopt an old age assistance plan containing certain requirements, one of which was that 'if the State or any of its political subdivisions collects from the estate of any recipient of old-age assistance any amount with respect to old-age assistance furnished him under the plan, one-half of the net amount so collected shall be promptly paid to the United States.' * * * The only matter covered by this provision of the act of Congress and by our own statute which incorporated it was to provide for the apportionment and · distribution of such proceeds as may be realized from the estate of a recipient of aid, and both enactments left untouched any liability upon the part of the estate of a recipient to reimburse the city. A statute is to be fairly and reasonably construed and its scope is not to be extended by construction beyond its apparent limits. [Citing authorities].

"Both Congress and our own Legislature were content to let that liability continue to rest upon the principles of common law and to share in the proceeds of actions where payments had been made through accident, fraud or mistake. The mere right to share in one half of the net amount collected from the estate of a recipient of aid, without establishing any obligation upon the part of the estate to pay and without creating any new remedy, must be construed to mean that the collection from the estate must be had by present remedies under our existing law. This conclusion is also supported by the relationship existing between the Federal and State governments in the establishment and maintenance of old age assistance. * * *

"Report No. 615 of the committee on ways and means recommended the passage of the social security bill (H.R. 7260). The bill then contained s. 206, captioned 'Over-

payments during life,' which provided that 'If any recipient, through error or otherwise, has received benefit payments in excess of the amount to which he is entitled, and dies before such overpayments have been adjusted,' then his estate shall repay a certain amount to the United States. In the same report, at page 17, it appears that the purpose of this section was to secure from the State one half of the Federal contributions paid to recipients from whose estates the State has recovered on account of payments 'because those persons had been defrauding the State.' The committee on finance, report No. 628, recommended the adoption of bill H.R. 7260 containing said s. 206, and gave (page 29) the same explanation of the purpose of this section as did the committee on ways and means. *It is clear that Congress merely provided for reimbursement from the estate of a deceased recipient who had through error or fraud received overpayments during his life time.* And the only purpose of our Legislature in enacting that portion of what now is section 4 of c. 118A relative to reimbursement, other than from bond or mortgage, from the estate of a recipient of aid, was a declaration of the public policy of this Commonwealth that when recovery was had one half of the proceeds would be paid to the national treasury. [Citing authorities].

"Under that law there can be no recovery where payments were not made by accident, fraud or mistake." (Emphasis ours).

If it is said that Section 24-a furnishes the right of the State to recover from estates "the total amount of assistance paid" to a recipient under the act (Ch. 237, Laws 1947), and that the applicant for assistance was informed of the provisions of the act and acquiesced therein and thereto, there is then established the relationship of debtor and creditor and Sec. 2 of art. 8 of the Constitution, extending credit to an individual, is violated. And, again, if it is said there is no violation of the credit provision of the Constitution, where then, we ask, is the obligation upon the part of the estate to pay. If the recipient of aid, during his lifetime, did not consult and agree, expressly or impliedly, to repay the amount paid him, how can any obligation attach to the estate. With these observations must we not conclude, that the only recovery that is permissible "rests upon the principles of common law and to share in the proceeds of actions where payments have been made through accident, fraud or mistake." There is another matter I feel disposed to mention, and which our legislature seemingly overlooked in enacting Sec. 24-a, supra, and is unnoticed in the majority opinion, and that is this: This jurisdiction is one of the eight community property law states. All property acquired after marriage by either husband or wife, (Sec. 31-907, I.C.A.) is community property.

Husband and wife are equal partners in community estate. Kohny v. Dunbar, 21 Idaho 258, 121 P. 544, L.R.A.,N.S., 1107, Ann.Cas. 1913D, 492; Peterson v. Peterson, 35 Idaho 470, 207 P. 425.

Wife's interest in community property is vested interest of same nature and extent as that of her husband. Muir v. Pocatello, 36 Idaho 532, 212 P. 345.

No distinction is made between husband and wife as to degree, quantity, and nature or extent of interest each has in community property. Ewald v. Hufton, 31 Idaho 373, 173 P. 247; Peterson v. Peterson, supra.

Upon the death of either husband or wife, one-half of all community property shall go to the survivor, subject to the community debts, etc. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property it shall go to the survivor, (Sec. 14-113 I.C. A.) subject to the community debts, etc. A recipent of old-age assistance cannot create a liability against the community property without the husband or wife, if such there be, joining in the encumbrance incurring such liability.

In the instant case the doctrine of primary jurisdiction is particularly applicable for the reason that section 24-a, Session Laws 1947, providing for a recovery from a recipient of old-age assistance places the discretion thereof within the state department, an administrative jurisdiction.

The demurrer to the complaint says that it does not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer without leave to amend and dismissed the action. In so doing the court was right. He had no original jurisdiction of the controversy and could entertain the same only in his appellate capacity. Furthermore, Section 24-a, Session Laws 1947, was void in that there is no provision for recovery under the Social Security Act which is necessary because of the cooperative functions and efforts of government and state laws. The aforementioned state statute is not in harmony with the Federal social security laws and for that reason must be disregarded as all acts of the Social Security Act, and the Public Assistance Act, must be administered together as a unified code of laws enacted by Congress and the state legislature for the complete and comprehensive control of the subject. "The matter in the final analysis brings us to the fundamental proposition that the subject of relief in its various phases, as provided by law, was strictly within the scope of legislative authority. That branch of the government very properly and necessarily assumed the function of providing the amount to be expended for that purpose, and the manner and method of distribution. The judicial department has neither power nor inclination to usurp that authority. If inadequate provision has been made for the meritorious necessities of the unfortunate people

of the state, we may sympathize personally but we are powerless to intervene officially." State v. Brandjord, supra [108 Mont. 447, 92 P.2d 279].

Plaintiff's action is instituted under the provisions of section 24-a, supra. The record shows that the first payment of old-age assistance was made in March 1943, and that Magnus died about August 1, 1946. The Department of Public Assistance, evidently in construing section 24-a, supra says, no claim may be filed against a home while it is being used as a residence by a surviving spouse. There is nothing in connection with the application for old-age assistance, or otherwise, that discloses that said applicant in becoming a recipient, either expressly or impliedly, contracts to repay any amount paid him by the state. Section 24-a, supra, in the instant case, is retroactive, both as to the 1947 act and, likewise, to the Act of 1943. There is nothing in the complaint, or the record, to advise us as to whether there is a surviving spouse in this case, nor, as to the nature of the estate, if any, of which Magnus was possessed at the time of his death. The "Creditors Preferred Claim," filed by the Department of Public Assistance of the State of Idaho, In the Matter of the Estate of Frans G. Magnus, deceased, recites, "The undersigned creditor of Frans G. Magnus, deceased, herewith presents its claim against the estate of said deceased with the necessary vouchers to Nels Lindstrom, executor of the estate of said deceased, for approval as follows: * * *" The Department of Public Assistance of the State of Idaho granted and paid old-age assistance to said deceased, as per the following itemized statement (following is the monthly date and monthly amount paid Magnus as per the creditors preferred claim which is attached to and made a part of the complaint.) "This claim is made and filed as a preferred claim against said estate under the provision of Section 2, Chapter 119, Idaho Session Laws 1943." It will be observed that the record discloses that the complaint was subsequently amended to show that the amount claimed to be due and owing to the state of Idaho was under the provisions of the Public Assistance Laws as amended by Section 4, Chapter 237, Session Laws 1947, and the provision contained in the claim as being under the Laws of 1943 was not stricken therefrom. The record also discloses that the defendant's demurrer to the plaintiff's complaint was argued and submitted for decision, and sustained without leave to amend and the action dismissed September 26, 1947. That there was a stipulation allowing the amendment showing that the action was prosecuted under the provisions of Section 4, Chapter 237, Session Laws 1947, nunc pro tunc by interlineation and without the same having previously been submitted to the trial court asking that the complaint be reinstated.

We submit that the order of the trial court sustaining the demurrer and dismissing the action should be affirmed.