2015 FEB -2 AM 10: 00


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>CASCADIAN BUILDING MAINTENANCE, LTD,<br><br>               Appellant,<br><br>NORMA TELLEZ,<br><br>               Defendant. | No. 71209-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br><br><br><br>FILED: February 2, 2015 |

LEACH, J. — Cascadian Building Maintenance Ltd. appeals a trial court decision denying Cascadian stay-at-work wage reimbursement for the first 3 of the 6 days its employee worked light duty following her industrial injury. Because RCW 51.32.090(4) incentivizes employers to allow workers to "remain at work following their injury," we reject the trial court's conclusion that RCW 51.32.090(7)'s 3-day waiting period for time loss payments to workers for temporary disabilities lasting 14 days or less applies to wage subsidy payments made to an employer under RCW 51.32.090(4). Because RCW 51.52.130 only authorizes attorney fee awards to injured workers and their beneficiaries, we

deny Cascadian's request for attorney fees, reverse, and remand for further proceedings consistent with this opinion.

## FACTS

On January 9, 2012, Norma Tellez suffered an injury in the course of her employment with Cascadian. Tellez's attending physician found her temporarily totally disabled from her job of injury and restricted her activities. On January 10, Cascadian offered her a light duty work position conforming to her physician's restrictions, which Tellez accepted. She performed the light duty work on January 10, 11, 12, 15, 16, and 17 of 2012. Her schedule remained the same: she worked Sunday through Thursday in the evenings. On January 22, Tellez resumed her usual duties with her attending physician's approval.

Cascadian requested wage subsidies from the Department of Labor and Industries (Department) under RCW 51.32.090(4), a stay-at-work program adopted in 2011. The Department reimbursed Cascadian for 50 percent of the wages it paid Tellez for her light duty work on January 15, 16, and 17—$168.12. But it denied Cascadian's claim for wage subsidies for January 10, 11, and 12. Citing RCW 51.32.090(7), the Department asserted "the first three days after the date of injury are not reimbursable because the worker did not remain restricted from full duties by the 14th day after the date of injury."

Cascadian appealed to the Board of Industrial Insurance Appeals (Board). The Board reversed the Department's order. The Department appealed to King County Superior Court. The trial court reversed the Board's order, reinstated the Department decision, and awarded the Department attorney fees. Cascadian appeals.

## JURISDICTION

As a preliminary matter, the amount apparently in issue, $168.12, causes us to consider our jurisdiction to decide this case. RCW 2.06.030 defines this court's appellate jurisdiction and excludes from it "civil actions at law for the recovery of money or personal property when the original amount in controversy, or the value of the property does not exceed the sum of two hundred dollars."

In Bowen v. Department of Social Security,[1] the Washington Supreme Court held that an appeal of an administrative decision is not a "civil action at law" and therefore its analogous monetary jurisdictional limitation did not apply to an appeal of a trial court decision reviewing an administrative agency decision. The court noted that "controversies arising before administrative bodies are in no sense civil actions as they were understood at common law."[2] It supported this statement in part with the observation that it "has recognized the principle with

---

[1] Bowen v. Dep't of Soc. Sec., 14 Wn.2d 148, 152, 127 P.2d 682 (1942).
[2] Bowen, 14 Wn.2d at 152.

-3-

respect to the industrial insurance act—that controversies arising under it are controlled by 'special statutory proceedings exercised <u>in derogation of, or not according to, the course of the common law.</u>'"[3] As in <u>Bowen</u>, the monetary limitation on our jurisdiction does not apply because this case is not a civil action at law.

STANDARD OF REVIEW

On appeal, this court reviews trial court judgments under the Industrial Insurance Act, Title 51 RCW, "as in other civil cases."[4] This court first looks to see if substantial evidence supports the trial court's factual findings and then reviews de novo whether the trial court's conclusions of law flow from these findings.[5] This court reviews the trial court's statutory construction de novo.[6] Courts construe the Industrial Insurance Act liberally in favor of the worker.[7]

ANALYSIS

Cascadian argues that the stay-at-work program requires the Department to reimburse it for all days Tellez performed light duty work. The Department

---

[3] <u>Bowen</u>, 14 Wn.2d at 153 (internal quotation marks omitted) (quoting <u>Nafus v. Dep't of Labor & Indus.</u>, 142 Wash. 48, 52, 251 P. 877 (1927)).

[4] RCW 51.52.140.

[5] <u>Dep't of Labor & Indus. v. Shirley</u>, 171 Wn. App. 870, 878, 288 P.3d 390 (2012) (quoting <u>Rogers v. Dep't of Labor & Indus.</u>, 151 Wn. App. 174, 180, 210 P.3d 355 (2009)).

[6] <u>Dep't of Labor & Indus. v. Fankhauser</u>, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993); <u>Lowy v. PeaceHealth</u>, 174 Wn.2d 769, 778, 280 P.3d 1078 (2012).

[7] RCW 51.12.010; <u>Dennis v. Dep't of Labor & Indus.</u>, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

argues that the statute only requires it to reimburse an employer for days a worker would have otherwise received temporary total disability benefits. RCW 51.32.090(7) provides that a worker temporarily disabled cannot receive compensation for the day of injury or the following 3 days if the disability continues for less than 14 days. Thus, the Department claims that it properly denied Cascadian reimbursement for the first 3 days after Tellez's injury. We disagree.

The legislature created the stay-at-work program to "encourage employers at the time of injury to provide light duty or transitional work for their workers" and made available "wage subsidies and other incentives" to those employers.[8] It found that "long-term disability and the cost of injuries [are] significantly reduced when injured workers remain at work following their injury."[9] When a worker's physician releases a worker and the worker begins light duty work for his or her employer, the worker receives wages for that work but not temporary total disability payments. Temporary total disability payments resume if the worker stops the light duty work.[10]

RCW 51.32.090(4) comprehensively describes the parameters of the stay-at-work program. It states when the Department must pay an eligible employer

---

[8] RCW 51.32.090(4)(a).
[9] RCW 51.32.090(4)(a).
[10] RCW 51.32.090(4)(b).

wage subsidies, establishes the amount of the subsidy at 50 percent of a worker's wages, and limits the amount paid on an individual claim to $10,000.[11] An employer may not collect any subsidy for nonwage compensation or for any day a worker does not actually work.[12] An employer may not receive a subsidy for more than 66 days of work in a consecutive 24-month period under one claim.[13] The statute also provides for subsidies for training and necessary clothing and tools or equipment if an employer does not normally provide them to its workers.[14]

RCW 51.32.090(7) states in relevant part,

> (7) No worker shall receive compensation for or during the day on which injury was received or the three days following the same, unless his or her disability shall continue for a period of fourteen consecutive calendar days from date of injury.

The Department argues that because this provision prohibits payment of compensation to Tellez for the three days following her industrial injury, it also prohibits payment of a wage subsidy to Cascadian for that same period.

We interpret a statute to accomplish the legislature's intent.[15] Because the legislature memorializes its intent in a statute's language, we look for the

---

[11] RCW 51.32.090(4)(c).
[12] RCW 51.32.090(4)(c).
[13] RCW 51.32.090(4)(c), (g).
[14] RCW 51.32.090(4)(d)-(f).
[15] State v. Coley, 180 Wn.2d 543, 553, 326 P.3d 702 (2014), petition for cert. filed, No. 14-7721 (U.S. Aug. 27, 2014).

plain meaning of that language.[16] To do this, we examine the "'context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"[17] We first look to the language of the statute to determine if the statute is clear on its face or ambiguous.[18] "If the meaning of the statute is plain, the court discerns legislative intent from the ordinary meaning of the words."[19] Only if a statute is ambiguous may a court employ statutory interpretation methods to analyze it.[20] Language is ambiguous if it is subject to two or more reasonable interpretations.[21] But "a statute is not ambiguous merely because more than one interpretation is conceivable."[22]

The parties dispute the meaning of the phrase "entitled to temporary total disability under this chapter" found in RCW 51.32.090(4)(b). Cascadian argues that the plain language of RCW 51.32.090(4) defines when an employer "shall not" receive wage subsidies. It contends that the trial court improperly added a further limitation not contained in the statute when it borrowed from RCW

---

[16] Coley, 180 Wn.2d at 553.

[17] Coley, 180 Wn.2d at 553 (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)); Tesoro Ref. & Mktg. Co. v. Dep't of Revenue, 164 Wn.2d 310, 317-18, 190 P.3d 28 (2008).

[18] Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

[19] Tesoro, 164 Wn.2d at 317.

[20] Cerrillo, 158 Wn.2d at 201.

[21] Cerrillo, 158 Wn.2d at 201 (quoting Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)).

[22] City of Seattle v. Winebrenner, 167 Wn.2d 451, 456, 219 P.3d 686 (2009).

51.32.090(7) the additional words "benefits" or "compensation" and inserted them into the phrase "entitled to temporary total disability." We agree with Cascadian.

The Department argues that courts use the phrase "temporary total disability" to describe "benefits." Thus, the State must pay an employer wage subsidies only if an employee is entitled to temporary total disability benefits for the days in issue. The Department asserts that the language in RCW 51.32.090(4), making the wage subsidy "pursuant to" the requirements of that subsection, along with the language in the same subsection which makes the wage subsidy available only to those "entitled to temporary total disability under this chapter," requires the conclusion that RCW 51.32.090(7) applies to wage subsidies.

But the legislature did not include the words "benefits" or "compensation" in the phrase "temporary total disability," used by it in RCW 51.32.090(4) to define the availability of the stay-at-work program. When the legislature defined the limitations on an employer's entitlement to wage subsidy recovery, it did not include the 3-day waiting period it mandated for payment of compensation to workers suffering short-term total temporary disabilities lasting less than 14 days.[23] We have difficulty accepting the Department's position that this difference has no significance.

_____

[23] RCW 51.32.090(4)(c), (g).

The Department offers no persuasive reason why this court should write into the statute a requirement not included by the legislature. Instead, the statute's language indicates the legislature's intent to encourage uninterrupted employment. The statute includes the legislature's finding that "the cost of injuries is significantly reduced when injured workers remain at work following their injury."[24] It provides for incentives to employers so that workers with an industrial injury "remain" at work.[25] The subsidies "encourage employers at the time of injury" to provide light duty or transitional work for their injured workers.[26] The program supports employers who "maintain the employment" of their injured employees.[27]

The legislature's plain language thus incentivizes an employer's continuous employment of an injured employee, not a return to light duty after three days. As the Board wrote in its opinion, "To interpret the statute otherwise is contrary to the stated legislative intent because it would discourage employers from offering light-duty work 'at the time of injury' in order for workers to 'remain' at work." The Department's proposed interpretation would encourage employers to wait three days before offering light duty employment to temporarily injured workers. The name of the program, "stay-at-work," conflicts with the

[24] RCW 51.32.090(4)(a).
[25] RCW 51.32.090(4)(a).
[26] RCW 51.32.090(4)(a).
[27] RCW 51.32.090(4)(c).

Department's interpretation. Finally, the Department has not proposed an interpretation that liberally construes this statute in favor of injured workers.

The Department pays a covered worker or an employer from distinct funding sources, such as the medical aid fund, the accident fund, and the supplemental pension fund.[28] The legislature also created a distinct funding source for wage subsidies to employers, requiring the Department to create a separate "Washington stay-at-work account" funded by assessments of insured employers.[29] Thus, the Department collects and pays wage subsidies from a different account than it does workers' compensation payments. The medical aid fund, accident fund, and stay-at-work account each have a separate base rate.[30] Employers must pay the department premiums for the accident fund, the medical aid fund, the stay-at-work program, and the supplemental pension fund.[31] Because employers pay separate premiums for the stay-at-work program, the cost savings and purposes supporting the three-day waiting period for temporary

---

[28] RCW 51.44.020; RCW 51.44.010; RCW 51.44.033.

[29] RCW 51.32.090(6). A 1954 opinion from the Attorney General's office analyzed RCW 51.32.090. That early statute provided that an injured worker may not be compensated from the accident fund if his employer continues to pay his wages. The Attorney General's opinion finds that a county may pay its employees for the first three days following industrial injury because "[t]he three-day period immediately following the injury is significant only in connection with the statutory limitation upon payments from the accident fund. The act imposes no limitations upon salary payments during this period." 1954 Op. Att'y Gen. No. 287, at 2.

[30] WAC 296-17-895.

[31] WAC 296-17-31024.

total disability payments under the accident fund are not served by applying the same limitations in the stay-at-work program.

We conclude that the plain language of RCW 51.32.090(4) and the statutory scheme as a whole support the Board's conclusion. We reverse the trial court and hold that the Department must pay Cascadian a wage subsidy for all six days Tellez worked light duty.

Finally, Cascadian claims that because Tellez has been "aligned in interest with the [sic] Cascadian throughout the litigation of this matter," it should be awarded attorney fees under RCW 51.52.130. RCW 51.52.130 provides for an award of attorney fees when a worker obtains reversal or modification of the Board's decision and additional relief on appeal. This ensures representation for injured workers and accords with the Industrial Insurance Act's purpose to ensure compensation for employees who suffer industrial injuries.

The plain language of the statute does not authorize an award of attorney fees to an employer. While Cascadian's appeal may have benefited Tellez or promoted a worker's interest in having light duty work provided by the employer, Cascadian's attorneys did not represent Tellez in this action. Cascadian may not recover attorney fees under RCW 51.52.130.

## CONCLUSION

Because the plain language of RCW 51.32.090(4) does not include the term "benefits" or otherwise indicate the legislature's intent that the limitations on temporary total disability compensation payments to a worker apply to wage subsidy payments under the stay-at-work program, we conclude that the three-day limitation for temporary total disability payments does not apply to those wage subsidy payments. Because RCW 51.52.130 does not authorize a fee award to an employer, we deny Cascadian's request for attorney fees on appeal but award it statutory costs as the prevailing party upon its compliance with the controlling court rules. We reverse and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Dwyer, J._            _Becker, J._