IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES, | ) ) ) | No. 79395-1-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) | PUBLISHED OPINION |
| RITO BRISENO, | ) ) ) | |
| Respondent. | ) ) | FILED: February 18, 2020 |

ANDRUS, J. — In these three consolidated cases, the Department of Labor and Industries (Department) appeals trial court rulings that employers were entitled to wage reimbursement under RCW 51.32.090's Stay-at-Work Program after obtaining retroactive medical approval of light duty job descriptions offered to their injured workers.

We conclude that the statute does not prohibit retroactive medical approval of light duty work, as long as the injured worker's provider has released the worker to remain at, or return to, work. We affirm the trial court's order directing the Department to reimburse employers Kemp West and One Way Plumbing. We reverse the trial court's order as to Sequoyah Electric because the record does not support the finding that Sequoyah Electric had a release from its worker's medical provider before employing that worker in light duty work.

FACTS

In 2011, the Washington Legislature created the Stay-at-Work Program to encourage employers to offer light or modified duty work to injured workers. Laws of 2011, Spec. Sess., ch. 37 § 101. The legislature found that the cost of long-term disability and injuries is significantly reduced when injured workers remain at work following their injury. RCW 51.32.090(4)(a). The Stay-at-Work program authorizes the Department to provide wage reimbursement, up to a maximum amount, to employers who allow injured workers to remain at, or return to, work in a light duty or modified work position. RCW 51.32.090(4)(c).

Under RCW 51.32.090(4)(b), if workers are entitled to temporary total disability under the Industrial Insurance Act, their employer may request that the workers be certified by their medical provider to perform light or modified work duties. The statute requires the employer to furnish the worker's medical provider with "a statement describing the work available" and the medical provider "shall then determine whether the worker is physically able to perform the work described." The Department continues to pay temporary total disability until the worker begins this light or modified work.

Wage subsidies are available for the employers when:

> (h) . . . the employer has completed and submitted the reimbursement request on forms developed by the department . . . . In no event shall an employer receive wage subsidy payments or reimbursements of any expenses pursuant to this subsection (4) unless the worker's [medical provider] . . . has restricted him or her from performing his or her usual work and the worker's [medical provider] . . . has released him or her to perform the work offered.

If an employer directs an injured worker to perform work other than that approved by the worker's medical provider, that employer may not receive any wage subsidy. RCW 51.32.090(j).

Three employers, Kemp West, Inc., Sequoyah Electric, LLC, and One Way Plumbing, LLC, offered light duty to their employees, Rito Briseno, Robert Sturgeon, and Josue Gonzalez Hernandez, respectively, after each sustained an on-the-job injury.

### 1. Kemp West, Inc.

On November 24, 2014, Kemp West employee Rito Briseno sustained an on-the-job injury and became eligible for total disability. The next day, Briseno's medical provider completed a Department-issued Activity Prescription Form (APF),[1] in which the provider released Briseno to perform modified light duty work, if available, from November 25 until Briseno's follow-up appointment on November 30. The APF listed specific physical restrictions and limitations, such as restricting Briseno from climbing a ladder or stairs and from performing work above the shoulders, as well as limiting his ability to lift and carry items. Briseno returned to work with Kemp West that same day in a modified light duty job consistent with the restrictions listed in the APF.

Briseno's medical provider completed a new APF during Briseno's November 30 follow-up visit, which authorized Briseno to continue the light duty job consistent with the same restrictions until his next visit on December 8.

---

[1] An Activity Prescription Form, or APF, is a form issued by the Department and is to be completed by a medical provider to communicate the employee's ability to work, functional capacities, physical restrictions, and treatment plan. https://lni.wa.gov/claims/for-medical-providers/activity-prescription-form.

On December 4, 2014, Kemp West sent Briseno's medical provider a written description of the specific light duty job Briseno had been performing, and it notified the provider that Briseno had started the light duty job on November 25. On December 8, Briseno's medical provider agreed in writing that Briseno was able to perform the light duty job and was able to do so as of November 25. Briseno continued working in the modified light duty job through February 13, 2015.

On July 30, 2015, Kemp West filed an application for wage reimbursement benefits under the Stay-at-Work Program, noting that Briseno had worked a light duty job for 52 calendar days. The Department approved Kemp West's request for wage reimbursement from December 4, 2014 to February 13, 2015, but it denied the request for November 24-25 and December 1-3, 2014. It based this partial denial on the fact that Kemp West had not sent the specific job description to Briseno's medical provider for her approval before December 4, 2014.

Kemp West, through its retrospective rating group, Approach Management Services (AMS), appealed the Department's decision to the Board. An industrial appeals judge (IAJ) reversed the Department's decision, reasoning that the purpose of the Stay-at-Work program is to provide for uninterrupted work in the event an employee is injured and that neither the statute nor the Department's regulation prohibited retroactive approval of a light duty job description. The Board declined to review the IAJ's order.

2. Sequoyah Electric, LLC

On September 10, 2014, the Department deemed Robert Sturgeon eligible for total disability based on the carpal tunnel syndrome he had sustained while

- 4 -

working for Sequoyah Electric. On September 12, 2014, Sturgeon's medical provider completed an APF, which indicated that he was not released to perform any work from September 16 to October 20, 2014, and indicated other physical restrictions he would need when he returned to work. Nevertheless, on September 16, 2014, Sturgeon returned to Sequoyah Electric in a light duty job consistent with the restrictions listed on the APF.

During a follow-up visit on September 22, Sturgeon's medical provider released him to work in a light or modified duty job from September 22 to October 22. The medical provider issued a new APF, in which he restricted Sturgeon from climbing a ladder or stairs and from crawling, as well as limiting the activities Sturgeon could do with his left arm, shoulder, and wrist. The medical provider also noted that Sturgeon had been working a light duty job and could continue to do so.

On October 14, Sequoyah Electric provided Sturgeon's medical provider with a written description of the specific light duty job that Sturgeon had been performing since September 16. Sturgeon's medical provider approved the job description the next day, October 15, with the approval retroactive to September 22.

When Sequoyah Electric applied for wage reimbursement benefits on October 30, it noted that Sturgeon had worked in a light duty job from September 16 to October 14, 2014, for a total of 21 days. The Department determined that Sequoyah Electric was ineligible for reimbursement for 20 of those days, September 16 to October 13, 2014, because it had not sent the specific job description to Sturgeon's medical provider until October 14.

On March 16, 2015, Sturgeon's medical provider retroactively approved the job description of the light duty job, this time indicating that Sturgeon could perform it from September 16 to November 17, 2014. The Department again denied reimbursement for September 16-19, but for some reason, it reimbursed Sequoyah Electric for the remaining dates, September 22 to October 14. The Department's denial for the initial four days was based again on Sequoyah Electric's failure to provide Sturgeon's medical provider with a job description of the light duty work before Sturgeon began the job.

Sequoyah Electric appealed the Department's order to the Board. On June 14, 2016, an IAJ affirmed the Department's order denying wage reimbursement benefits from September 16 to September 19, 2014, because Sequoyah Electric's request for retroactive approval of the light duty job description did not comply with the steps required by the statute to obtain wage reimbursement benefits.

Sequoyah Electric, through its workers compensation manager, AMS, sought Board review of the June 14 order. The Board reversed the IAJ's June 14 order and the Department's order, again reasoning that requiring medical provider approval of a specific job description before allowing an injured worker to return to work would undermine the effectiveness of the Stay-at-Work Program.

3. <u>One Way Plumbing, LLC</u>

On November 22, 2014, One Way Plumbing employee Josue Gonzalez Hernandez sustained an on-the-job injury and became eligible for total disability. Gonzalez Hernandez's medical provider initially restricted him from doing any type

- 6 -

of work. On December 8, 2014, his medical provider released him to work a light duty job with specific physical restrictions and limitations from December 8, 2014, until February 2, 2015. The medical provider completed an APF, restricting Gonzalez Hernandez from performing work above his shoulders and listed permissible and impermissible uses of his injured left wrist. Gonzalez Hernandez returned to work in a light duty job consistent with his provider's restrictions on December 17.

During a follow-up visit on January 12, 2015, Gonzalez Hernandez's medical provider adjusted his restrictions and limitations, and the provider completed a new APF. Gonzalez Hernandez saw his medical provider for another follow-up visit on February 9, 2015, and the provider noted that he was "back to work doing light construction duties" and that he was to "[c]ontinue [the] modified duties for the next 6 weeks."

On February 10, 2015, One Way Plumbing sent a written description of the specific light duty job that Gonzalez Hernandez had been performing since December 17, 2014 to his medical provider. On April 28, 2015, Gonzalez Hernandez's medical provider approved the light duty job and agreed that he could have performed the job as of December 12, 2014.

When One Way Plumbing applied for wage reimbursement benefits on May 5, 2015, it noted that Gonzalez Hernandez had worked in a light duty job for several working periods between December 17, 2014 and March 30, 2015, and it requested reimbursement for 66 days of light duty work, the statutory maximum. On May 28, 2015, the Department denied reimbursement for 32 of those days,

December 17, 2014 through February 7, 2015, reasoning that it could not reimburse One Way Plumbing for the dates before the job description was communicated to Gonzalez Hernandez's medical provider. It paid reimbursement benefits for the remaining days.

One Way Plumbing appealed the Department's denial of reimbursement benefits. On June 14, 2016, an IAJ affirmed the Department's order denying wage reimbursement benefits for the work periods between December 17, 2014 and February 7, 2015, agreeing with the Department that the statute, although unclear, outlined the proper timing of the steps required to obtain wage reimbursement benefits and that One Way Plumbing had not complied with these steps.

One Way Plumbing, through its workers compensation manager, AMS, sought Board review of the IAJ's June 14 order. The Board reversed.

The Department appealed the three Board rulings to superior court. On September 7, 2017, the trial court consolidated these appeals, and on December 12, it issued three identical orders affirming the Board. The trial court concluded that "RCW 51.32.090(4) requires that the employer at injury must offer the injured worker light duty work that is approved by the worker's attending provider, but such approval of a formal written job description can be retroactive for purposes of an employer's entitlement to wage reimbursement benefits." The Department appeals.

## STANDARD OF REVIEW

On appeal, this court reviews judgments under the Industrial Insurance Act, Title 51 RCW, as in other civil cases and reviews the decision of the superior court,

not that of the Board. RCW 51.52.140; see also Dep't of Labor and Indus. v. Cascadian Bldg. Maint., Ltd, 185 Wn. App. 643, 647, 342 P.3d 1185 (2015).

This appeal requires us to interpret RCW 51.32.090. The interpretation of a statute is a question of law reviewed de novo. Cockle v. Dep't of Labor & Indus., 142 Wn.2d 801, 807, 16 P.3d 583 (2001). If a statute is plain and unambiguous, its meaning must be primarily derived from the statutory text itself. Cockle, 142 Wn.2d at 807. But when the statutory language is susceptible to more than one reasonable interpretation, it is considered ambiguous. Id. at 808. When a statute is ambiguous, a reviewing court looks to the principles of statutory construction, legislative history, and relevant case law. Id. "The primary goal of statutory construction is to carry out legislative intent." Id. at 807. Although this court gives deference to the interpretation of the agency charged with implementing the statute,[2] the agency's interpretation is not binding. Cockle, 142 Wn.2d at 812. Deference is inappropriate "when the agency's interpretation conflicts with a statutory mandate." Id.

## ANALYSIS

The Department argues on appeal that these three employers are not entitled to wage reimbursement benefits for any days preceding the date on which the employees' medical providers received *and* approved specific written job descriptions. It argues that retroactive approval is not permitted under RCW

---

[2] The Department of Labor and Industries is the department charged with implementing the Industrial Insurance Act. RCW 51.08.040; see also Dep't of Labor & Indus. v. Slaugh, 177 Wn. App. 439, 452, 312 P.3d 676 (2013).

51.32.090(4)(b)[3] The employers argue that RCW 51.32.090(4)(h), which governs wage reimbursement, permits retroactive approval.

Subsection 4(b) provides that if an employer requests certification from a medical provider that an injured worker can perform light duty work and provides a statement of the work available, then "[t]he physician . . . shall then determine whether the worker is physically able to perform the work described. The worker's temporary total disability payments shall continue until the worker is released by his or her physician . . . for the work, and begins the work with the employer of injury." RCW 51.32.090(4)(b) (emphasis added).

This temporal language supports the Department's position that a medical provider must approve a specific job description of the available light duty work before the employee begins the work. And if this approval must precede the work, then a medical provider's retroactive approval of a formal job description would be inconsistent with the statutory framework.

But, as the employers correctly note, subsection 4(b) does not specifically address the employer's entitlement to wage reimbursement. Subsection 4(h) does. And that provision provides, in relevant part:

> In no event shall an employer receive wage subsidy payments or reimbursements of any expenses pursuant to this subsection (4) unless the worker's physician or licensed advanced registered nurse practitioner has restricted him or her from performing his or her usual work and the worker's physician or licensed advanced registered nurse practitioner has released him or her to perform the work offered.

---

[3] This position is inconsistent with the Department's position below. The Department denied wage reimbursement requests only for the days preceding the employer's transmittal of a formal written job description to the medical provider. It did not deny benefits for the delay in obtaining that medical provider's approval. The Department has not explained the inconsistency in its statutory interpretation.

RCW 51.32.090(4)(h). The temporal language of subsection 4(b) does not appear in subsection 4(h), suggesting that while an employer's entitlement to wage reimbursement is conditioned on a medical provider's approval of the job offered, that entitlement is not based on whether that approval precedes the work. Subsection 4(h) merely requires that a provider identify physical restrictions and release the employee to perform modified or light duty work if offered by the employer. It does not specify whether the "release" refers to the general release outlined in the APFs or to the provider's approval of a specific written job description of the light or modified duty work.

Even if it refers to the approval of a specific job description, subsection 4(h) does not specify when this approval must occur. On one hand, the Department contends that the legislature's use of the past tense in the phrase "has released [the employee] to perform the work offered" indicates that an offer has to be made to the employee and must be conditioned on the medical provider's prior approval.

But on the other hand, as the employers argue, the language of the statute could reasonably be interpreted to mean that a medical provider need only approve the specific job description at some point before the employer seeks wage reimbursement benefits from the Department but not necessarily before the employee begins performing the job.

We conclude that the language of subsections 4(b) and 4(h), when read together, is ambiguous. We therefore must refer to principles of statutory construction, the statute's legislative history, and relevant case law, with the goal of carrying out the legislative intent of the Stay-at-Work Program.

- 11 -

First, subsection 4(a) provides clear legislative findings:

> The legislature finds that long-term disability and the cost of injuries is significantly reduced when injured workers <u>remain at work</u> following their injury. To encourage employers <u>at the time of injury</u> to provide light duty or transitional work for their workers, wage subsidies and other incentives are made available to employers insured with the department.

RCW 51.32.090(4)(a) (emphasis added). We give great deference to the legislature's factual findings. <u>Wash. Off Highway Vehicle Alliance v. State</u>, 176 Wn.2d 225, 236, 290 P.3d 954 (2012). "Legislatures must necessarily make inquiries and factual determinations as an incident to the process of making law, and courts ordinarily will not controvert or even question legislative findings of facts." <u>Id.</u> (quoting <u>City of Tacoma v. O'Brien</u>, 85 Wn.2d 266, 270, 534 P.2d 114 (1975)).

If the legislature has determined that, from a policy perspective, it is preferable to entice employers to allow injured workers to "remain" at work "at the time of their injury," then the Department's interpretation of the statute—requiring the employee to stop all work until a medical provider has received and approved a specific written job description—undermines this legislative goal. Subsection 4(a) supports the employers' interpretation that retroactive approval of the job description is permissible if the provider has released the employer to remain at, or return to, work in a light or modified duty job.

Second, this court has previously stated that a delay in an employee's return to work does not conform to the legislative intent of the statute. <u>See Cascadian</u>, 185 Wn. App. at 651 (reasoning that a three-day waiting period for receipt of wage reimbursement benefits did not conform to the legislative intent because "the

statute's language indicates the legislature's intent to encourage uninterrupted employment" and that "[t]he subsidies 'encourage employers at the time of injury' to provide light duty or transitional work for their injured workers"). Our Supreme Court recognized that any delay in an injured employee's return to some work is contrary to the legislative intent, which supports the trial court's interpretation of the statute. After all, the wage reimbursement is a part of a "stay-at-work" program, not a "return-to-work" program.

Third, the Department's interpretation of the statute below would not advance the valid safety concerns it has articulated on appeal. The Department contends that prohibiting retroactive approval of the work offered to injured employees is necessary to ensure that those employees are not put into jobs they are incapable of physically performing. But the Department did not deny the employers' wage reimbursement requests until the medical providers *approved* specific written job descriptions of the light or modified duty work; it denied the requests only until the employers transmitted the job descriptions to the providers. If the Department was concerned about workers performing tasks not explicitly approved of by their providers, it would make little sense to approve wage reimbursement on the date the providers receive, rather than approve, the specific written job descriptions. The inconsistency in the Department's interpretation of RCW 51.32.090 undermines the credibility of its safety argument.

Moreover, the Department's concerns can be adequately addressed by requiring the employer to ensure that any injured employee has been medically released to stay at, or return to, work post-injury before allowing that employee to

start any light duty work. The practice of obtaining an APF from an injured employee's medical provider, which sets a date on which the employee may physically work and identifies specific restrictions for such work, has historically sufficed to ensure employees are not forced into jobs their injuries prevent them from safely performing.

In light of the legislature's stated goals, we conclude that RCW 51.32.090 does not render an employer ineligible for wage reimbursement if it obtains retroactive approval of a specific light duty job description, as long as the injured employee has been medically released to work before he or she begins that work.

In this case, medical providers for both Briseno and Gonzalez Hernandez released them to work a light or modified duty job before they actually began the work. The medical providers for both Briseno and Gonzalez Hernandez retroactively approved the written job descriptions for work that they had been offered and that they had been performing since the date of their release to light duty work. We conclude that the trial court correctly directed the Department to pay Kemp West and One Way Plumbing the unpaid wage reimbursement benefits from the date the employees were released to work.

The record relating to Sturgeon differs significantly. Sturgeon became eligible for time loss compensation on September 10, 2014. His medical provider initially restricted him from returning to work in any capacity until October 20, 2014. Sturgeon, however, began working in a modified light duty job on September 16, 2014, without any medical release to do so. During a follow-up visit on September 22, 2014, Sturgeon's medical provider released him to work in a modified light duty

job as of that date. Thus, Sturgeon—unlike Briseno or Gonzalez Hernandez—did not have a medical release to work until September 22, 2014. The trial court's finding that Sturgeon returned to work on September 16, 2014, in a job "consistent with the restrictions his attending provider had placed on him on September 12, 2014," is not supported by the evidence.

In March 2015, AMS asked Sturgeon's medical provider to retroactively approve Sturgeon's light duty work. Contrary to the September 12 and September 22 APFs, the medical provider approved Sturgeon to work in a modified or light duty capacity retroactive to September 16, 2014. But Sturgeon's medical provider had not released him to perform any work, let alone modified light duty work, when Sturgeon began working on September 16, 2014. While wage reimbursement based on retroactive approval of a job description is permissible under RCW 51.32.090(4)(h) when the medical provider has released the employee to perform light duty work, it is impermissible if there has been no such release at the time the employee began that work. See RCW 51.32.090(4)(j) ("An employer who directs a claimant to perform work other than that approved by the attending physician and without the approval of the worker's [medical provider] shall not receive any wage subsidy or other reimbursements for such work.")

Because Sturgeon was not released to perform any light or modified duty work until September 22, 2014, the Department properly denied Sequoyah Electric's request for wage reimbursement from September 16-19, 2014, and the

trial court erred when it directed the Department to reimburse Sequoyah Electric for these dates.[4]

We affirm the court's orders directing reimbursement to Kemp West and to One Way Plumbing but reverse the order directing reimbursement to Sequoyah Electric.

Affirmed in part, reversed in part.

WE CONCUR:

Andrus, J.

Leach, J.

---

[4] Our conclusion does not modify the reimbursement that Sequoyah Electric received from the Department. The Department properly reimbursed Sequoyah Electric for the dates Sturgeon worked in a light duty capacity between September 22 and October 13.